**UNITED STATES of America,**
Libelant,

v.

**3 CARTONS, MORE OR LESS, "NO. 26 FORMULA GM etc.," Respondents,**
and

**Basic Endocrines Sales Company, Inc.,**
Claimant.

**No. 12820.**

United States District Court
S. D. California, Central Division.
Nov. 20, 1952.

Walter S. Binns, U. S. Atty., Clyde C. Downing, Asst. U. S. Atty., Chief, Civil Division, Robert Komins, Asst. U. S. Atty., Los Angeles, Cal., for the United States.

Lee J. Myers, Long Beach, Cal., for claimant.

JAMES M. CARTER, District Judge.

(1) During 1949, the W. H. Grew Manufacturing Company shipped various quantities of the following articles from Salt Lake City, Utah, to Seattle, Washington, consigned to the Basic Endocrines Sales Company, Inc., 1219 Northern Life Tower:

No. 26 Formula GM
No.  6 Formula GE – 5
No. 29 Formula GM – 3
No. 38 Formula GM – 12
No. 33 Formula GM – 7
No. 105 Androgenic Hormone

(2) On December 20, 1949, the United States filed a Libel of Information in the U. S. District Court for the Western District of Washington, No. 15418, alleging that said articles were drugs and were misbranded within the meaning of 21 U.S.C.A. § 352(f) (1) in that their labeling failed to bear adequate directions for use.

(3) Pursuant to said Libel and process issued thereunder, the United States Marshal for the Western District of Washington seized said articles in the possession of said Basic Endocrines Sales Company, Inc., at Seattle, Washington, which was then holding them to fill orders from customers.

(4) The Basic Endocrines Sales Co., intervened as claimant and filed an Answer, and later an Amended Answer, denying that the articles were either drugs or misbranded. Subsequently, by Order of Removal dated January 22, 1951, the cause was transferred by the District Court for the Western District of Washington to this District for trial.

(5) Extensive pre-trial proceedings were had in this District and the case was submitted upon a stipulated record.

(6) On January 30, 1952, by Stipulation and Order as to Partial Withdrawal of Claim and Amended Answer, the claimant withdrew its Claim and Amended Answer with respect to the article designated as "No. 105 Androgenic Hormone". Claimant asserted it was no longer distributing this article and therefore had no reason to contest the allegations in the Libel regarding this article.

(7) The labeling of the articles under seizure consists solely of the labels affixed to the individual cartons. One of these labels, typical of all, reads in its entirety as follows:

"No. 6 Formula GE – 5      30 Capsules

"Each Capsule Contains: (Apoth) Cardiac 5 grs., and Vegetable base q.s.

"Caution: To be used only under the direction of a Doctor.

"There is no scientific evidence that Cardiac is therapeutically active when taken orally.

"Manufactured for and distributed by

"Basic Endocrines Sales Co., Inc. —Seattle, Wash."

(8) Claimant concedes that none of these articles has any therapeutic value.

(9) Claimant has been doing an interstate business in the distribution of these products for the past 25 years. Claimant's main office is in Seattle, Washington, and it has branch offices in Los Angeles, San Francisco, Chicago, Detroit, and Cleveland. All literature used by the various branch offices emanates from the Seattle office. Sales promotion practices of the firm are the same throughout the country; the same literature is used and the same representations are made for its products in all the branch offices.

(10) Each product has a rather long identifying name—e. g., "No. 6 Formula GE – 5." Claimant has from time to time used different identifying symbols for its products but the letters and number following the word "Formula" have remained constant. Thus Formula GE – 5" has been unchanged and has referred to the same product though sometimes preceded by a number other than "No. 6".

(11) During the past 17 years, claimant's representatives have distributed many items of literature to customers and prospective customers to induce orders for claimant's products. Exhibits before the Court include 18 specimens of such literature, ranging in size from a 1-page chart to a 126-page booklet. These Exhibits are identified as follows:

Exhibit 1—Booklet entitled "Basic Endocrines" (5th Edition)—published about 1937.

Exhibit 2—Indications Chart—1935.

Exhibit 3—Booklet entitled "Basic Foods and Endocrines" subtitle "Formulae and Reference Guide"—1935.

Exhibit 5—Booklet entitled "Basic Endocrines from Embryo Throughout Life" (6th Edition, 1939).

Exhibit 6—Leaflet entitled "Basic Endocrines" — about 1940.

Exhibit 8—Booklet entitled "Basic Endocrines from Embryo Throughout Life"—1945.

Exhibit 9—Leaflet entitled "Androgenic Substance in Corn Oil"—1945.

Exhibit 11—Booklet entitled "Index of Basic Endocrines".

Exhibit 12—Leaflet entitled "Dysmenorrhea" and "Nephritis, etc."

Exhibit 13—Booklet entitled "Basic Endocrines from Embryo Throughout Life" and "Theory and Use of Basic Endocrines," 1941.

Exhibit 14—Magazines entitled "Endogram", July 1947, August 1949, April 1949, January 1949.

Exhibit 15—Booklet entitled "Basic Endocrines from Embryo Throughout Life" (Price List, 1947).

Exhibit 19—Three miniature leaflets entitled "Basic Endocrines from Embryo Throughout Life"—Volume 1, No. 1, No. 3, and No. 4.

Exhibit 20—Two miniature leaflets entitled "Basic Endocrines from Embryo Throughout Life"—Volume 1, No. 5 and No. 6.

Exhibit 22—Indications or Symptom Chart.

Exhibit 23—Chart entitled "Foundation of Basic Endocrines".

Exhibit 24—Specimens of current labels of articles under seizure.

Exhibit 25—Booklet entitled "Basic Endocrines from Embryo Throughout Life"—1938 Edition.

(12) Despite claimant's concession that the products under seizure have no

therapeutic value, claimant's literature has consistently represented these products as efficacious in the treatment, mitigation, and prevention of many ailments including some of the most serious that afflict mankind.

(13) Claimant's Secretary represents that in recent years the claimant has ordered its representatives to cease distributing said literature, but actual distribution of such literature has nevertheless been continued by its representatives. Claimant's representatives or detail men have given or "loaned" to prospective customers so-called "personal copies" of some items of this literature containing the most comprehensive therapeutic claims for the products under seizure.

(14) Claimant's representatives or detail men have also freely given their customers oral advice regarding the disease conditions for which they claimed these products were indicated as well as the dosages in which they should be prescribed in treating those conditions.

(15) Many of claimant's customers who had apparently not received its literature (making therapeutic claims) in recent years, had in their possession identical or similar literature which claimant had distributed 7–14 years ago, and these customers relied upon such literature and the aforesaid oral advice in ordering and prescribing the products in question.

(16) The products under seizure are labeled to declare the presence of minute quantities of animal glands in a vegetable base. For example, "No. 6 Formula GE–5" is represented to contain 5 grains of cardiac or animal heart in each capsule. It would require 1400 capsules, each containing five grains of cardiac, to comprise one pound of cardiac substance.

(17) The articles under seizure are all drugs within the meaning of 21 U.S.C.A. § 321(g) (2) since they were intended for use in the treatment, mitigation, and prevention of many disease conditions. Such intended use is neither negated nor camouflaged by the following disclaimer which in substance appears on the label of each article: "There is no scientific evidence that Cardiac is therapeutically active when taken orally."

(18) The labeling of said drugs does not mention any disease condition.

(19) The labeling of said drugs fails to bear adequate directions for use in that it fails to state the purposes and conditions for which said drugs are intended.

Conclusions of Law.

(1) The articles here involved were shipped in interstate commerce from Salt Lake City, Utah, to Seattle, Washington.

(2) Said articles were seized by the United States Marshal for the Western District of Washington within the jurisdiction of the U. S. District Court for that District, pursuant to 21 U.S.C.A. § 334(a). The jurisdiction of this Court derives from an Order of the U. S. District Court for the Western District of Washington removing the instant cause to this District on application of the claimant, pursuant to 21 U.S.C.A. § 334 (a).

(3) For the purposes of Section 201(g) (2) of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C.A. § 321(g) (2), it is the *intended use* of an article which determines whether it is a drug, regardless of its inherent properties or dictionary definition. By this statutory definition, an article is a drug if it is intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals.

(4) An article which is a food under 21 U.S.C.A. § 321(f) may also be a drug under 21 U.S.C.A. § 321(g) (2) depending upon its intended use.

(5) There is no distinction between a representation that an article has *value* in the treatment of heart trouble, and a representation that an article has *nutritional value* in the treatment of heart trouble. Either of these representations will make the article a drug within the meaning of 21 U.S.C.A.

§ 321(g) (2). The use of the term "nutritional" in the sales promotion of an article will not immunize it from the drug provisions of the Federal Food, Drug, and Cosmetic Act if it is in fact intended for therapeutic purposes.

■ (6) "The Act is not concerned with the purification of the stream of commerce in the abstract. The problem is a practical one of consumer protection, not dialectics." U. S. v. Urbuteit, 1948, 335 U.S. 355, 357–358, 69 S.Ct. 112, 114, 93 L.Ed. 61.

(7) If an article is intended for use in the cure, treatment, mitigation, or prevention of disease, such article is a drug under 21 U.S.C.A. § 321(g) (2) and it is immaterial whether it is designated as a therapeutic agent or as a nutritional support.

■ (8) In ascertaining the intended use of an article to determine whether it is a drug under 21 U.S.C.A. § 321(g) (2), the Court may look to any source which discloses the intended use.

■ (9) Where a person has set in motion forces that result in creating an impression that an article has value in the treatment of disease, he cannot avoid the legal consequences of such action by a disclaimer in the labeling asserting there is no scientific evidence that the article has therapeutic value.

■ (10) Where a distributor has given its customers literature which makes therapeutic claims for its products, and years later the customers continue to rely upon that literature in ordering and prescribing those products, such literature may properly be examined by a Court in seeking to determine whether the products are drugs within the meaning of 21 U.S.C.A. § 321(g) (2).

■ (11) Nor is it significant whether the distributor has stopped giving out the literature. Where a person has set in motion forces that result in the continued profitable demand for his products, he cannot continue to fill that demand and yet avoid all responsibility for those forces by disclaiming he is still setting them in motion.

(12) Each of the articles under seizure is a drug within the meaning of 21 U.S.C.A. § 321(g) (2).

■ (13) A drug is misbranded under 21 U.S.C.A. § 352(f) (1) unless its labeling bears "adequate directions for use".

(14) The labeling of a drug does not bear "adequate directions for use" unless, among other things, its states the purposes and conditions for which the drug is intended.

(15) All of the drugs under seizure were misbranded when introduced into and while in interstate commerce in that the labeling of each drug failed to state the purposes and conditions for which such drug was intended.

■ (16) All of said drugs are subject to condemnation and destruction pursuant to 21 U.S.C.A. § 334(a) and (d), and libelant is entitled to a decree ordering such condemnation and destruction.

(17) Libelant is entitled to its costs herein, pursuant to 21 U.S.C.A. § 334 (e).