**UNITED STATES of America,**
**Libellant-Appellant,**

v.

**4 CASES * * * SLIM-MINT CHEWING GUM, Thompson Medical Company, Claimant-Appellee.**

**No. 13370.**

United States Court of Appeals Seventh Circuit.

March 2, 1962.

Rehearing Denied April 9, 1962.

James P. O'Brien, U. S. Atty., Chicago, Ill., William W. Goodrich, U. S. Dept. of Health, Education & Welfare, Washington, D. C., Thomas W. James, Asst. U. S. Atty., Chicago, Ill., William J. Risteau, Atty., Dept. of Health, Education, and Welfare, Washington, D. C., for appellant.

Joshua Levine, New York City, George M. Burditt, Chicago, Ill. (C. Lee Cook, Jr., Snyder, Chadwell, Keck, Kayser, & Ruggles, Chicago, Ill., Patricia Hatry,

Davis, Gilbert, Levine & Schwartz, New York City, of counsel), for claimant-appellee.

Before HASTINGS, Chief Judge, and KNOCH and KILEY, Circuit Judges.

KNOCH, Circuit Judge.

The government brought this action *in rem* under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C.A. § 334, to condemn Slim-Mint Chewing Gum allegedly misbranded in violation of the Act, 21 U.S.C.A. § 352(a), which provides that a drug shall be deemed misbranded:

"If its labeling is false or misleading in any particular."

The libel of information refers to:

[T]he following described articles of written, printed and graphic matter which accompany said article of drug as labeling and which contain statements relating thereto, namely:

A newspaper mat reading "Eat What You Want—Yet Lose Up to 3–5–9 Pounds a Week"

An unknown number of tear sheets reading "Eat What You Want—Yet Lose Up to 3–5–9 Pounds a Week!" and "Eat What You Want—Yet Lose Pounds and Inches Fast"

An unknown number of streamers entitled "Reduce Without Dieting" (in red ink) and

An unknown number of placards reading "Life! Now! Lose Up To 5 Pounds a Week—Reduce * * *"

and charges:

3. That the aforesaid article (all lots) was misbranded when introduced into, while in, and while held for sale after shipment in interstate commerce, within the meaning of said Act, 21 U.S.C. 352(a) in that the name "Slim-Mint Chewing Gum" and statements and designs appearing in its labeling, namely, the display carton and card, the box label and insert, the newspaper mat and tear sheet reading "Eat What You Want—Yet Lose Up to 3–5–9 Pounds a Week!", the tear sheet reading "Eat What You Want—Yet Lose Pounds and Inches Fast", the streamers entitled "Reduce Without Dieting" (in red ink); and the placards reading "Life! Now! Lose Up To 5 Pounds a Week * * * Reduce * * *", accompanying said article, contains statements and designs which represent and suggest that the article is an adequate and effective treatment for obesity, which statements are false and misleading since the article is not an adequate and effective treatment for obesity.

A claim to the attached cases of Slim-Mint was filed by Thompson Medical Company as bona fide owner.

There was no contention that the Slim-Mint article was adulterated or harmful to health.

The jury heard evidence of medical witnesses called by the government and by the claimant, and lay witnesses who testified for claimant. There was no motion for a directed verdict. The jury returned a verdict for claimant. The Trial Court denied the government's motion for new trial. This appeal followed.

The government contends that the record shows that the labeling is false and the article clearly misbranded. The Trial Court instructed the jury:

You must find the Slim-Mint Gum to be misbranded, therefore, if you find that any one of the statements made in the labeling is false or misleading.

The government asserts that the jury failed to follow this instruction. The government also poses the theory that it is not precluded from seeking review of the adequacy of the evidence, even though it first raised the question in its motion for a new trial.

The government relies on United States v. Harrell, 8 Cir., 1943, 133 F.2d 504. That case involved eminent domain proceedings. The Eighth Circuit held (at page 506) that:

"Since the government failed to move the trial court, at the close of

the evidence, for a directed verdict on the ground that the evidence was insufficient to sustain a verdict for the appellees, and since the government took no other equivalent action, it is not entitled as of right to a review of the question of the sufficiency of the evidence to support the judgment." [citations omitted]

However, the Eighth Circuit in Harrell also held that where the public interest is directly and substantially involved, a federal appellate court, in order to prevent a manifest miscarriage of justice, may notice an apparent error not properly raised on the record. The Court stressed the fact (at page 507 of 133 F.2d) that:

"[T]he rule is invoked only in the exceptional case, and its application in any particular case may not be accepted as a departure from the general rules governing the preservation of questions for review here."

In Harrell, the Eighth Circuit found an obvious error in the Trial Court's charge to the jury (at page 505 of 133 F. 2d):

"I am going to say to the jury the Government has taken these leases and whatever you believe the market value is from all the evidence and the circumstances in this case, you are entitled to that damage."

The Eighth Circuit found nothing in the record to support the charge that the government had taken the leases in question, or to excuse the failure of counsel for the government to accept that charge without objection, and concluded that the government's acceptance must lie in something which occurred in chambers prior to the trial, and which was not brought into the record. The Eighth Circuit then went on to say that no evidence was presented to the jury from which the fair value of the leases could be determined. The leases had never been introduced in evidence. No witness before the jury had professed any knowledge of their terms or conditions. The jury was left in ignorance of the rent, how long the leases ran, whether the lessees were required to drill for oil on penalty of forfeiture, whether the leases were renewable, etc.

The government cites a number of cases in which Harrell has been cited with approval. In Lambur v. Yates, 8 Cir., 1945, 148 F.2d 137, plaintiff, a tenant, sought to recover excessive rentals collected in violation of the Emergency Price Control Act. The case was pleaded and tried, without objection, on the theory that there were twelve separate violations. The contention that there had been only one violation (over a period of 12 months) was raised in the appellate court for the first time. However (1) numerous cases involving the same statute were pending, (2) no federal appellate court had construed the statute, and (3) the decisions of state and district courts were in conflict. Therefore, the Eighth Circuit ruled on this issue [adversely to appellant] despite the delay in raising the question.

In Hoblik v. United States, 8 Cir., 1945, 151 F.2d 971, another eminent domain case, the Court restated the rule (at page 972) that:

"The question of the sufficiency of the evidence to sustain a verdict is usually not subject to review on appeal unless the record shows that, during the trial, that question was presented to the trial court by a motion for a directed verdict, a request for a ruling or an instruction, or some other equivalent action." [citations omitted]

but then added:

"In this case, however, we shall assume that the question of the sufficiency of the evidence to support the verdict is properly before us. In a case such as this, where the sole issue was one of fact for the jury, it reasonably can be urged that a verdict, if entirely without evidentiary support, should be set aside to prevent a manifest miscarriage of justice." [citing Harrell]

The Court found the verdict to be supported by substantial evidence and concluded (at page 973 of 151 F.2d) with a cautionary word:

"As was said by the Supreme Court in Fairmount Glass Works v. Cub Fork Coal Co., 287 U.S. 474, 485, 53 S.Ct. 252, 255, 77 L.Ed. 439, 'Appellate courts should be slow to impute to juries a disregard of their duties, and to trial courts a want of diligence or perspicacity in appraising the jury's conduct.'"

An insurance company sought declaratory judgment that a liability policy had been canceled in Frieze v. West American Insurance Co., 8 Cir., 1951, 190 F.2d 381, also cited by the government. The Court of Appeals concluded that the right to cancel the policy did not exist because of failure to comply with statutory provisions covering cancellation, although those provisions had not been brought to the attention of the Trial Court, reversed judgment for plaintiff and remanded the cause to the District Court. The Court of Appeals stressed the fact that it was proceeding under an exception to the rule which ought to be sparingly applied.

The government further cited United States v. Certain Parcels of Land, etc., 5 Cir., 1945, 149 F.2d 81, which also involved eminent domain. There the Court found (at page 82) that the case was:

"[C]onducted throughout with complete disregard of the rules of proof governing in such cases * *. That the case was wrongly tried throughout may not be doubted."

even though:

"It is true enough that the counsel for the United States stood by doing nothing to prevent, if they did not add to, the resulting confusion, and that normally a judge may not thus be put in error." [citation omitted]

In Hardware Mutual Casualty Co. v. Chapman, 7 Cir., 1959, 272 F.2d 614, and Commercial Credit Corporation v. Pepper, 5 Cir., 1951, 187 F.2d 71, also cited by the government, the published reports indicate that motions for directed verdicts were filed in the course of the trials.

In Complete Auto Transit, Inc. v. Floyd, 5 Cir., 1958, 249 F.2d 396, the Court said (at page 399):

"Our reversal of the judgment of the court below is based upon the error committed by the court below in denying appellant's motion for new trial based upon the legal excessiveness of the verdict of the jury. * * The granting or refusing of a new trial is a matter resting within the sound discretion of the trial court exercised with regard to what is right and in the interest of justice; but that discretion is subject to review by the appellate court when it feels that injustice has resulted from the action of the lower court because of its conviction that the verdict was excessive as a matter of law and not merely as a matter of fact."

In Indamer Corporation v. Crandon, 5 Cir., 1954, 217 F.2d 391, the jury was allowed to hear an improper contention that plaintiff had been paid $50,000 by a foreign insurance company and had no interest in the case, where the prejudicial effect of the statement was fully known to counsel making it. The monetary award was characterized by the Appellate Court as a small fraction of the loss as proved by the plaintiff and as testified to by a disinterested witness. The cause was remanded for a new trial limited to the issue of damages alone.

Georgia-Pacific Corporation v. United States, 5 Cir., 1959, 264 F.2d 161, was a tax case. The Fifth Circuit found (at page 164) that:

"The sole controversy was over whether, as plaintiff contended, the stipulated and undisputed facts were such that taxpayer was entitled to a cost base for the timber, the sale of part of which brought about the tax controversy in this case, measured by the value placed upon the timber when the stock purchase was made, * * *.

"The government also contended below that there was no real issue of fact in the case as to the occurrences described in the evidence, but it insisted that, as matter of law, the last transaction, the statutory merger, was not a component step in a multiple step transaction but an independent transaction, which established the base as contended for by the commissioner."

At the conclusion of the evidence, the Trial Judge overruled the government's motion for a directed verdict and inquired whether plaintiff desired to move for a directed verdict. Plaintiff, however, thought the matter would be best disposed of by a verdict. The Court then gave instructions to the jury, to which the government objected as virtually directing a verdict for plaintiff.

"When, contrary to the general expectation, the jury returned a verdict for the United States, the plaintiff moved for a new trial on the ground that the verdict was without evidence to support it and manifestly unjust, and, this motion denied, appealed from the judgment presenting here a single specification of error. This is: that there was a complete lack of evidence to support the verdict; that it was, therefore, manifestly unjust and in excess of the powers of the jury and may not stand; * * *." [page 165 of 264 F.2d]

The Fifth Circuit found that refusal to grant a new trial under these circumstances was a clear abuse of discretion.

In Charles v. Norfolk & Western Ry. Co., 7 Cir., 1951, 188 F.2d 691, this Court stated (at page 692) that:

"Since plaintiff made no motion for directed verdict she may not, on appeal, challenge the sufficiency of the evidence to support the verdict for defendant. [citations omitted] The appeal, however, does present a serious question whether under the circumstances disclosed by the record she was entitled to a new trial."

This Court found that the Trial Court had given an erroneous instruction, over plaintiff's objection. Other instructions to which objection had not been raised were misleading and confusing. Further, the Trial Judge had himself expressed dissatisfaction with the verdict indicating that he felt an injustice had been done. The erroneous instruction imposed a burden of proof on plaintiff which was not required by the applicable law. This Court thought this was an exceptional case in which there had been a miscarriage of justice.

In Hamblen v. Kazlauski, 7 Cir., 1958, 259 F.2d 754, both parties cited the rule of this Circuit, as announced by Judge Duffy in Irvin Jacobs & Co. v. Fidelity & Deposit Co. of Md., 1953, 7 Cir., 202 F.2d 794, 799:

"Prior to the time that the jury returned its verdict the plaintiff did not move for a directed verdict or otherwise question the sufficiency of the evidence to support a verdict if returned in favor of the defendant. Under well established principles, the sufficiency of the evidence to support the verdict is not preserved for review * * * [citations omitted] unless this is one of those exceptional cases [citations omitted] which render inapplicable the general rule."

We did not find Hamblen to be such an exceptional case. Nor do we find that the case before us falls within the scope of the exceptions exemplified by the above cited cases on which the government relies.

■ The government's motion for a new trial was addressed to the sound discretion of the Trial Court. The sole basis for the motion was the asserted lack of evidence to support the verdict.

■ The government had the burden of proving the allegations of its Libel of Information by a preponderance of the evidence. The government introduced three medical witnesses, all of whom described studies which they had conducted with the accused product, Slim-Mint, and

from which they concluded that it would not depress appetite, as claimed for it, and thus effect weight reduction.

Dr. Leon S. Hirsh described the problems of obesity, and the operation of appetite as a function of memory. He testified that one must use up 3600 more calories than one receives in order to lose one pound, and that one, therefore, could not lose three to nine pounds per week without total fast and starvation, or lose five to twenty pounds "fast." He thought that the absorption by the stomach of the small quantity of benzocaine contained in Slim-Mint would be nil, and that its local anesthetic effect in the mouth would be negligible. Drs. Herbert Kupperman and Sam William Kalb both testified that even if some of the ingredients of Slim-Mint, such as benzocaine, oil of wintergreen and oil of peppermint (which are local anesthetics) might dull the taste buds, that would still not control appetite. All three doctors characterized the advertised claims for Slim-Mint as false. Dr. Kalb said that the promotional pamphlet promised reduction without dieting, but that the insert in the package did in fact prescribe a diet.

The government and claimant differ on the proper definition of diet in this connection. The government quoted the definition contained in the American Illustrated Medical Dictionary:

> The customary allowance of food and drink taken by any person from day to day.

The claimant contends that on that definition all persons at all times are dieting. Claimant's witness Dr. Loesch defined "diet" as follows:

> Diet would be a specialized prescribed regime of a stated composition and listed ingredients. * * * For different types of patients you would prescribe different diets. For cardiac patients you might prescribe a low salt diet. * * * It is a given composition for a given distribution of food with quite fixed values of what a person should have.

The insert of which the government complains recommends good eating habits.

Examples include: "Don't tempt yourself with fattening foods on the table." "Eliminate the use of salt * * *" "Learn to like the natural flavor of food without butter, cream, or mayonnaise." "Avoid fried foods * * *" "Each day you should eat two portions of broiled or boiled lean meat or fish. Two boiled or poached eggs or a portion of any cheese may be substituted for the meat. Eat fresh fruits and vegetables, raw if you like." Claimant's expert witnesses said that this general instructional sheet was not a "diet."

The testimony of the government's expert witnesses was subjected to attack on cross-examination and through contrary testimony of claimant's witnesses. For example, on cross-examination, defense counsel elicited testimony regarding the nature of the studies made, with a view to showing poor selection of participants, instruction given them which differed from that contained in the Slim-Mint packages, inadequate record-keeping and controls to ensure accuracy of testing. The three doctors testified further as to their own medical and pharmacological experience with obesity and their own theories on its treatment. One doctor, for instance, indicated what the jury could have regarded as a bias against all self-medication. Claimant's witness Professor Kenneth Alexander Brownlee characterized Dr. Kupperman's records as inconsistent and inaccurate. The government's expert witnesses also criticized each other's tests.

Claimant's three expert witnesses, Drs. L. A. Nalefski, Arnold E. Weyman and Frederick A. Treffer, testified regarding their tests. They found Slim-Mint was an aid to appetite control. The government argues that none of these doctors could explain exactly how and why the drug worked. However, they did report successful results. Dr. Loesch suggested a possible theory involving oral gratification as a substitute for food.

Several lay witnesses testified to their own loss of weight while using Slim-Mint. They said they ate as much as they wanted to eat, but found themselves wanting

**150**

to eat less than before. One witness said he lost twenty pounds in about six months, which he considered "fast." Another testified to a loss of thirty-eight pounds in about five months. A third testified to losing twenty-five pounds in a single month.

 The jury here could reasonably have found that there was a lack of credible and reliable evidence adduced by the government to sustain its burden of proof. We conclude that the District Judge did not abuse his discretion in denying the motion for new trial. The judgment of the District Court is affirmed.