UNITED STATES of America, Libelant,

v.

An Article of Drug Consisting of 250 JARS, ETC., OF U. S. FANCY PURE HONEY, etc., Claimant.

No. 21863.

United States District Court
E. D. Michigan, S. D.
May 29, 1963.

Lawrence Gubow, U. S. Atty., Milton J. Trumbauer, Jr., Asst. U. S. Atty., Detroit, Mich., William W. Goodrich, Asst. Gen. Counsel, Food and Drug Div., Dept. of Health, Education and Welfare, Washington, D. C., for libelant.

Solomon H. Friend, Bass & Friend, New York City, for claimant.

FREEMAN, District Judge.

This matter is before the Court on a libel proceeding brought by the United States for the condemnation under § 304 (a) of the Federal Food, Drug and Cosmetic Act, as amended, 21 U.S.C.A. § 334 (a), of a quantity of allegedly misbranded honey, sold by the claimant, Detroit Vital Foods, Inc., at one of its stores located at 22,200 Grand River Avenue, Detroit, Michigan.

The parties have entered into a stipulation of facts which was presented to this Court on the day this case was orally argued. The essential facts are as follows. On October 12, 1961, Food and Drug Inspector, Gerald E. Vince, visited claimant's store and, posing as an ordinary or prospective customer, asked a clerk on duty whether they had any material about honey. In response to this request, the clerk pointed out a booklet entitled "About Honey" by P. E. Norris and gave Inspector Vince a copy of a newspaper mailing piece containing an article entitled "Eat Honey and Increase Your Vitality," which was sent to the customers on claimant's mailing list.

On November 8, 1961, the government seized some 198 jars and tins of honey, along with six copies of the booklet by Norris and 71 copies of the newspaper-type mailing leaflet, which were the same articles that were pointed out and given to Inspector Vince. The seized honey, which had been shipped from other states and countries in interstate commerce, was located in the store on shelves displaying honey, jams, jellies, etc., along the wall to the right and left and in the center of the store, in a storeroom at the back of the main store premises, and in the hallway near the basement stairs. The six booklets "About Honey", which

sold at $1.00 per copy, were displayed with other books upon a fiber pegboard rack atop stock shelves containing honey along the wall on the right side of the store as one faces the back. The newspaper mailing pieces were located on a table in a small room in back of the cash register, which was located at the rear of the store and constituted a surplus of copies sent to claimant's customers.

The claimant makes no contention with respect to the medicinal and curative properties of honey for the prevention and treatment of diabetes, high blood pressure, arthritis, kidney and bladder ailments, nervous conditions, weakening of potency and virility, loss of appetite, heartburn, gastric catarrh, obesity, throat and bronchial ills, premature death, lack of vitality, gout, digestive upsets, sciatica, rheumatism, arteriosclerosis, weak heart, or for any medical purposes. The claimant did consent to the libelant's introducing into evidence affidavits of medical doctors attesting to the fact that honey is not adequate and effective for these purposes, waiving any right to cross-examination of the affiants.

Both the claimant and the libelant agree that in order for the latter to properly condemn the seized goods, it must establish that the honey was a drug and that the literature constituted labeling, as these terms are respectively defined by Title 21 U.S.C.A. § 321(g) and (m).

Before disposing of the above issues, this Court is faced with the initial problem of whether the libelant must establish its case by a mere preponderance of the evidence or by clear, convincing proof. The better view and weight of authority definitely holds that the government need only prove the allegations of its libel by a preponderance of the evidence. United States v. 4 Cases * * * Slim-Mint Chewing Gum (CA 7, 1962), 300 F.2d 144; United States v. Wood (CA 4, 1955), 226 F.2d 924; United States v. 449 Cases, Etc. (CA 2, 1954), 212 F.2d 567, 45 A.L.R.2d 846; United States v. 5 Cases, Etc. (CA 2, 1949), 179 F.2d 519; United States v. 46 Cases, More or Less, "Welch's Nut Caramels" (D.C.R.I., 1962), 204 F.Supp. 321; United States v. 11¼ Dozen Packages, Etc. (D.C.W.D.N.Y., 1941), 40 F.Supp. 208. The contra authority upon which the claimant relies is not persuasive. In the case of Van Camp Sea Food Company v. United States (CA 3, 1936), 82 F.2d 365, the court did hold that the government should establish its case by clear and convincing proof, but went on to hold that even under the mere preponderance standard, there was not sufficient evidence for the jury. The case of C. C. Co. v. United States (CA 5, 1944), 147 F.2d 820, involved an interesting situation. On the original hearing, the court tried the case de novo and reversed the decree of condemnation, but on a rehearing, the court applied the "clearly erroneous" rule and affirmed the condemnation decree. In its opinion on rehearing, the court points out that since forfeiture statutes are generally construed strictly in favor of the defendant, it follows as a natural corollary of this rule of construction that forfeiture proceedings demand a higher degree of proof than a mere preponderance, and cites the Van Camp decision. However, the Court then goes on to cite United States v. Stowell, 133 U.S. 1, 10 S.Ct. 244, 33 L.Ed. 555, for the proposition that statutes enacted for the public good to suppress a public wrong, although they impose penalties or forfeitures, are not to be strictly construed in favor of the defendant. Consequently, though it does not specifically state, the court appears to be saying, and it must logically follow, that where a forefeiture arises out of a statute enacted to protect the public from a wrong, clear and convincing evidence is not required.

Therefore, this Court concludes that the libelant need only establish its case that the seized honey was a drug and that the seized literature constituted labeling by a mere preponderance of the evidence. Nevertheless, this Court holds that the libelant not only established its case by a preponderance of the evidence, but also by clear and convincing proof.

Title 21 U.S.C.A. § 321(g), defines a drug to include " * * * (2) articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of diseases in man or other animals."

■■ In determining that a particular article was intended to be used as a drug, a court is not limited to the labels on such article or to the labeling which accompanies it, but may look at all relevant sources. V. E. Irons, Inc. v. United States, (CA 1, 1957), 244 F.2d 34; United States v. Hohensee (CA 3, 1957), 243 F.2d 367; Alberty Food Products v. United States (CA 9, 1952), 194 F. 2d 463; United States v. 3 Cartons, Etc. (D.C.S.D.Cal., 1952), 132 F.Supp. 569. Therefore, in the present case, this Court may utilize the newspaper leaflet and the booklet, regardless of whether they constitute labeling under the Act, in order to determine whether the seized honey was intended to be used as a drug. A reading of the booklet and mailing leaflets results in the inescapable conclusion that such honey was intended to be used as a drug, since this literature makes the rather remarkable claim that honey is a panacea for various diseases and ailments that have plagued man from time immemorial. The fact that the seized honey is a food cannot take it out of the statutory definition of the word "drug", since such honey was intended to be used in the capacity of a drug.

■ The only remaining significant issue which this Court must decide is whether the seized literature constituted labeling. Title 21 U.S.C.A. § 321(m) states that "The term 'labeling' means all labels and other written, printed or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article."

The claimant contends that in order for this seized literature to constitute labeling, it must be interdependently and actually integrated with the seized honey, and that it must be actually used in the distribution or sale of such honey. More specifically, the claimant argues that: (1) the literature referred to honey in the generic sense and not to any specific brand; (2) the booklet was displayed for independent sale, as evidenced by the fact it appeared in the store's so-called book department and contained a $1.00 price designation; and (3) the newspaper leaflets were in a back room of the store and, at best, constituted advertising for honey generally.

Under the statute, the literature need only accompany the seized product. The word "accompany" has been given a very broad interpretation by the Supreme Court. In Kordel v. United States, 335 U.S. 345, 350, 69 S.Ct. 106, 109, 93 L. Ed. 52 (1948), the Court stated:

"One article or thing is accompanied by another when it supplements or explains it, in the manner that a committee report of the Congress accompanies a bill. No physical attachment one to the other is necessary. It is the textual relationship that is significant."

The claimant cannot escape the conclusion that the literature was "labeling", even though the booklets were held for sale, and that the newspaper leaflets constituted "advertising". In Kordel the Court forcefully disposed of similar contentions in the following language, which appears at pp. 350–351, 69 S.Ct. at pp. 109–110 of the opinion:

"Moreover, the fact that some of the booklets carried a selling price is immaterial on the facts shown here. As stated by the Court of Appeals, the booklets and drugs were nonetheless interdependent; they were parts of an integrated distribution program. The Act cannot be circumvented by the easy device of a 'sale' of the advertising matter where the advertising performs the function of labeling.

"Petitioner points out that in the evolution of the Act the ban on false advertising was eliminated, the control over it being transferred to the Federal Trade Commission. 52 Stat. 114, 15 U.S.C. § 55(a). We have searched the legislative history in

vain, however, to find any indication that Congress had the purpose to eliminate from the Act advertising which performs the function of labeling. Every labeling is in a sense an advertisement. The advertising which we have here performs the same function as it would if it were on the article or on the containers or wrappers. As we have said physical attachment or contiguity is unnecessary under § 201(m) (2)."

Since both a copy of the booklet and the leaflet were shown to the Food and Drug Inspector when he passed as a prospective customer and asked for information concerning honey, a permissible and reasonable inference is that this literature was shown to the Inspector to induce him to purchase claimant's honey. In other words, this literature which was found in the store was generally used in promoting the sale of the honey and was approved advertising matter, available upon request. United States v. 353 Cases, Etc. (CA 8, 1957), 247 F.2d 473. Further, the newspaper leaflets were mailed to prospective customers in order to promote the sale of the seized honey.

 The claimant's argument that since the literature only refers to honey in its generic term, it cannot constitute labeling, is without merit. § 321(m) specifically states that if the written, printed, or graphic matter accompanies the *article*, such matter constitutes labeling, and § 334 subjects to forfeiture "[a]ny *article* of * * * drug * * * that is * * * misbranded * * *." (Emphasis supplied) The word *article* is defined by Webster's New International Dictionary (2nd Edition) as "A thing of a particular class or kind, as distinct from a thing of another class or kind; a commodity; as, an *article* of merchandise; salt is a necessary *article*." In other words, honey itself is an article under the statute. To give to the word "article" the very restricted meaning that claimant attempts to do indirectly would not only result in disregarding its literal meaning, but it would do violence

to the noble purpose of the Food, Drug and Cosmetic Act. That Act was passed for the purpose of protecting unwary customers in vital matters of health and, consequently, it must be given a liberal interpretation to effectuate this high purpose. United States v. Hohensee, supra, 243 F.2d 367. This Court will not open a loophole through which those who prey upon the weakness, gullibility and superstition of human nature can escape the consequences of their actions. As the Court in United States v. Urbuteit, 335 U.S. 355, 358, 69 S.Ct. 112, 114, 93 L.Ed. 61 (1948), stated: "The problem is a practical one of consumer protection, not dialectics."

■ Claimant's remaining defenses of (1) entrapment, and (2) insufficiency of the libel, are without merit. Furthermore, the latter defense asserted on the day of trial was not timely in view of an earlier filing date required for filing such motions specified in the pretrial order.

An appropriate order may be submitted.