**UNITED STATES of America, Libelant,**

v.

**ARTICLES OF DRUG, ETC., Claimant.**

**Civ. No. 01485.**

United States District Court
D. Nebraska.

Jan. 4, 1967.

Walter E. Byerly, Gen. Counsel, Dept. of Health, Education and Welfare, Washington, D. C., and R. J. Blumenthal, Asst.

U. S. Atty., District of Nebraska, for libelant.

Robert C. McGowan, Omaha, Neb., and Kirkpatrick W. Dilling, Chicago, Ill., for claimant.

## MEMORANDUM

RICHARD E. ROBINSON, Chief Judge.

This action arose under the provisions of the Federal Food, Drug, and Cosmetic Act, Title 21, U.S.C. § 301 et seq. Specifically, Libelant asks this Court to condemn certain articles alleged to be misbranded under the terms of the Act.

Seizure and condemnation are provided for at Title 21 U.S.C. § 334:—

"Any article of food, drug, device, or cosmetic that is adulterated or misbranded when introduced into or while in interstate commerce or while held for sale [whether or not the first sale] after shipment in interstate commerce * * * shall be liable to be proceeded against while in interstate commerce, or at any time thereafter, on libel of information and condemned in any district court of the United States within the jurisdiction of which the article is found * * *."

The libel charges that the products are drugs, and that they are misbranded in that their labeling is false and misleading, [21 U.S.C. § 352[a]], and because the labeling does not bear adequate directions for use, [21 U.S.C. § 352[f] [1]].

On May 18, 1962, the United States Marshal seized the items which were the subject of this action. The articles seized where 1 can of "Vit-Ra-Tox 19", 1 bottle of "Vit-Ra-Tox 19a", 6 bottles of "Vit-Ra-Tox 21", 10 bottles of "Vit-Ra-Tox 53", and 20 bottles of "Vit-Ra-Tox 16". The Marshal also seized certain pamphlets which described the "Vit-Ra-Tox" products and which were used in their promotion.

The interstate shipment of the articles seized has been stipulated to by the claimant. The claimant further stipulated that "Vit-Ra-Tox" #16, #21, and #53 were held for sale after interstate shipment. The evidence shows that "Vit-Ra-Tox" #19 was offered for sale by reference to the Vit-Ra-Tox program described in the booklet "Your Life". No evidence was presented to establish that Vit-Ra-Tox 19[a] was so offered.

The pamphlets, one entitled "Your Life" and the other "Hydrated Bentonite", are claimed to be labeling for the Vit-Ra-Tox products and one of the sources of the alleged misbranding. Claimant has stipulated that "Your Life" is labeling for "Vit-Ra-Tox 21", and that "Hydrated Bentonite" is labeling for "Vit-Ra-Tox 16". We find that "Your Life" is labeling for all of the seized products with the exception of "19[a]". Labeling is defined at Title 21 U.S.C. § 321[m]:

"The term 'labeling' means all labels and other written, printed, or graphic matter * * * [2] accompanying such article."

There need not be a physical attachment to the product to constitute "accompanying" Kordel v. United States, 335 U.S. 345, 69 S.Ct. 106, 93 L.Ed. 52 [1948]. Claimant's position, that "Your Life" is labeling for "21" only, would appear to be grounded on the fact that the greater portion of the text is concerned with that product than the others. The brochure is divided into two major sections; Chapter one, entitled "The Problem" is 14 pages in length; Chapter two, "Our Recommendation" extends another 35 pages. Chapter one describes the need for improved nutrition. Chapter two first explains how Vit-Ra-Tox 21 is processed, then why natural vitamins are superior to their synthetic counterpart, and concludes with a section called "Vit-Ra-Tox Accessory Products". The final transition is accomplished in this manner:

"Vit-Ra-Tox Accessory Products

Your Automobile has many valuable accessories that add to your pleasure and convenience but are not absolutely essential to your transportation."

" 'Green Life' [Vit-Ra-Tox 21] is the building product of the Vit-Ra-Tox Line but accessories are needed."

The booklet then describes the entire "Vit-Ra-Tox Line" [except 19[a]] including those articles seized and subject to this condemnation proceeding. This section is three pages in length. The fact that the greatest number of pages of text is devoted to the "21" product does not mean that the booklet is labeling for it only. The other articles are described by the text and pictures in the brochure and, through the transitional device quoted above, linked to the entire text as "Accessories [that] are needed." The Supreme Court in the *Kordel* case [supra] emphasized that "Accompanying" could be by a textual relation, not merely by physical attachment. "Your Life" describes problems which are supposedly the product of poor nutrition, and recommends a "Vit-Ra-Tox Program" apparently as the solution to the problem. All of the seized articles are a part of the "Vit-Ra-Tox Program" [with the exception of 19[a]]. "Your Life" is labeling for all of them.

The libel charges that the products are misbranded in that their labeling is false and misleading [21 U.S.C. § 352[a]] and because the labeling does not bear adequate directions for use, [21 U.S.C. § 352[f] [1]]. In order to come within the purview of these provisions, it must first be shown that the products are "drugs". "Drugs" are defined in the Food, Drug and Cosmetic Act at Title 21 U.S.C. § 321[g] [1] to mean:

"[1] [A]rticles recognized in the official United States Pharmacopoeia * * *

[2] [A]rticles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals * * *."

The principal ingredient of "Vit-Ra-Tox 16" Hydrated Aluminum Sulfate, is listed in the Pharmacopoeia of the U. S., therefore "#16" is a drug as a matter of law. Both "Vit-Ra-Tox 19" and "Vit-Ra-Tox 19[a]" are laxative products. Their intended use is shown by their labels, and by other "labeling" accompanying the article. They are, therefore, articles [other than food] which are intended to affect a function of the body and are drugs under 21 U.S.C. § 321[g] [3]. We have also concluded that "Vit-Ra-Tox 21", and "53" are drugs within the meaning of the Act. Courts have uniformly held that the search for the "intended use" of a product is not limited to the label on the container and may extend to oral and written representations about the products. V. E. Irons, Inc. v. United States, 244 F.2d 34 [1 Cir. 1957]; United States v. Hohensee, 243 F.2d 367 [3 Cir. 1957]; United States v. 3 Cartons, etc., Formula G M, 132 F.Supp. 569 [S.D.Cal., 1952]. The products involved here were orally represented to be an effective cure for everything from a backache to cancer. In a sales pitch delivered to Inspector Emmitt G. Warner of the Food and Drug Administration at his home on February 15, 1962 the "Vit-Ra-Tox" products were represented to be a remedy for several diseases. The sales pitch was delivered by two distributors of the "Vit-Ra-Tox" products, Paul Zdan, and Robert Christenson, recorded, transcribed, and offered in evidence at the trial. The transcription shows conclusively that the products are drugs. Our finding that the products are drugs, however, need not rest on the sales pitch. The pamphlet, "Your Life", implies that the products are for use in prevention of disease and they are therefore drugs within the Act's definition. This conclusion remains unaltered by the statement contained in "Your Life" that " * * * Green Life Products are Foods not drugs". When healing powers are attributed to "foods", they become drugs within the meaning of the Act.

"Misleading" as used within the Act should be determined by the effect that the material [label and labeling] will have on prospective purchasers to whom the claims are addressed. V. E. Irons v. United States [supra]. It would defeat the obvious intent of the Act to

hold such persons to special knowledge or ability. Nor should the Court assume that the buying public will exercise great selectivity and caution in what they choose to believe of what they hear or read. On the other hand, misbranding cannot be based on a strained and distorted interpretation of the text.

These principles were enunciated by Judge Delehant speaking for this Court in United States v. Vitamin Industries, Inc., 130 F.Supp. 755 [D.Neb., 1955].

"It seems from the authorities * * * to be established that the test is neither the significance of the publicity to observers of notably superior intelligence nor its appeal to the mentally dull or infirm, but rather its attraction to people of ordinary understanding and discrimination. The reaction of the average person is thus made the test. But allowance has also to be made for the susceptibility to the publicity of the groups or types of people at whom it is peculiarly aimed."

"Your Life" is an illustrated pamphlet which describes the need for "natural" vitamins, a variety which appears to be inaccessable but for "Vit-Ra-Tox 21". The need described is couched in terms of emergency and is obviously intended to place the reader in fear of his well-being. The following paragraph headings are illustrative:

"Social Decay and Race Deterioration Face Us."

"Health of Humanity at stake"

"Physical Deformations due to civilized but stupid diet of processed foods deprived of vitamins and minerals."

"Soil Health could mean national suicide."

   *     *     *     *     *     *

The message conveyed by the first chapter of "Your Life" is that a great majority of our population are sick; that poor nutrition is the primary source of the illnesses; that processed food is the cause of our nutritional problems; and that synthetic vitamins are not up to the job. Chapter II then explains why the Vit-Ra-Tox program is the only available solution to the dilemma described in Chapter I.

  ■  We have concluded that the booklet, "Your Life" is misleading. We have not decided that any particular statement or portion of its text makes it objectionable, rather that the brochure as a whole distorts the truth, and if accepted at face value, would mislead the reader.

There are a number of techniques employed by the author of "Your Life" which are peculiarly adapted to achieving a misleading result. Part I of the pamphlet is composed of a series of quotations from a variety of sources including the Holy Bible, United States Government publications, published articles by physicians, report of the American Medical Association and others. Some of the quotes are linked by short paragraphs which, in effect, summarize the material. Others are placed together with no transitional explanation. Although each quotation used may not have been misleading in the context in which it was originally presented or even in isolation, it does not necessarily follow that a combination of them will convey an accurate message. To be specific, even though 60% of our population may suffer from a physical defect, that a sound diet is essential to good health, and that the diets of a large number of Americans are nutritionally deficient; the claimant is still not justified in placing these facts [which we have assumed to be true] in a series as to infer a causal relation between the physical defects and the inadequate diets. Evidence produced at trial showed that while 60% of our population may suffer from some type of physical defect, they are for the most part only remotely related [if at all] to nutritional deficiencies.

Another technique employed by the author of "Your Life" is to oversimplify by use of pictured analogies. Thus, snythetic vitamins are compared as molten metal while natural vitamins are represented by a Swiss Watch. The caption says: "The Swiss watch and the piece of molten metal may analysis [sic]

alike in the laboratory, but one functions, the other doesn't." Expert opinion proved the implications of the illustration to be without basis. Another illustration compares an African on native food with a "Second generation African on civilized food." While the first is shown to be healthy and well developed, the second suffers from "malocclusions of the teeth, facial pinching, and elongation." The caption explains: "What prenatal food can do to body structure." The representation of any causal connection between prenatal foods and hereditary characteristics were shown to be false by expert testimony at trial.

Claimant would have us avoid this result by applying the rule of difference in expert opinion. In support they cite the rule as stated in 21 Code of Federal Regulations at § 1.3.

"Difference of opinion among experts. The existence of a difference of opinion, among experts qualified by scientific training and experience, as to the truth of a representation made or suggested in the labeling is a fact [among other facts] the failure to reveal which may render the labeling misleading, if there is a material weight of opinion contrary to such representation."

Claimant argues that the publication complies with this rule in that differences of expert opinion as to the various statements in the book are revealed by footnotes. The following is an example of such notations:

"Some so-called experts discount that sick; or poor quality soil has any bearing upon the nutritional quality of the food produced from it, these experts thus differing from the experts cited herein."

"Your Life", p. 11.

We would first question whether a reference to "Some so-called experts * * *" gives adequate recognition to the opposing view. However, the extent to which the conflicting opinion must be fairly reflected need not be decided here, because the flaw in claimant's position is more basic. While there may be a dif-ference of opinion as to the particular statements to which the footnotes refer, there appears to be no recognized medical authority that would support the message conveyed by the text as a whole. An admission of possible difference of opinion does not provide an inaccessable harbor for misleading representations. This would apply equally to the individual statements and the message of the entire text. The government has shown "Your Life" to be misleading in both ways.

■ All of the statements and representations contained in the labeling need not be proven false in order to prevail on a charge of misbranding. United States v. One Device, etc., Colonic Irrigation, 160 F.2d 194 [C.A. 10, 1947].

■ The government has proven its charge under § 334 [supra] by a preponderance of the evidence; United States v. 4 Cases Slim-Mint Chewing Gum, 300 F.2d 144 [C.A. 7, 1962]; United States v. 119 Cases, etc., "New Dextra Brand Fortified Cane Sugar", 231 F. Supp. 551 [S.D.Fla., 1963]; affirmed 334 F.2d 238 [C.A. 5, 1964]; United States v. 250 Jars, etc., of U. S. Fancy Pure Honey, 218 F.Supp. 208 [E.D.Mich., 1963], affirmed 344 F.2d 288 [C.A. 6, 1965], and this alone justifies a decree of condemnation as to the articles shown to be misbranded. These products are "Vit-Ra-Tox" #16, "Vit-Ra-Tox" #21, "Vit-Ra-Tox" #53, and "Vit-Ra-Tox" #19. The government has failed to prove that Vit-Ra-Tox 19[a] was misbranded in any way. The product was not referred to in "Your Life", the oral sales pitch of salesmen Christensen and Zdan, or any other labeling entered in evidence. The claimant does agree, however, that this product has deteriorated and must be destroyed. Having decided that the products are misbranded by the misleading representations of the brochure, "Your Life", it is unnecessary to decide whether they were further misbranded by the pamphlet "Hydrated Bentonite". As such, no opinion is given as to that particular labeling.

The foregoing shall constitute findings of fact and conclusions of law in ac-

cordance with Rule 52[a] of the Federal Rules of Civil Procedure. Counsel for the government will prepare and submit an appropriate decree of condemnation within fifteen [15] days.