NUTRILAB, INC.; Naturalife-Ecovite Laboratories, Inc., d/b/a Paragon Laboratories; Jean Pierre Products, Inc., and Natural Research, Plaintiffs and Counterdefendants,

v.

Richard S. SCHWEIKER, U. S. Secretary of Health and Human Services; and Arthur Hull Hayes, Jr., Commissioner of the U. S. Food and Drug Administration, Defendants,

The United States of America, Counterplaintiff.

BIO–TECH LABORATORIES, INC.; Vita-Lite Laboratories, Inc.; Dynavest; J. John Marshall, Ph.D.; J. Robert Lemon, R.Ph., and Ronald F. Frantz, Plaintiffs and Counterdefendants,

v.

Richard S. SCHWEIKER, U. S. Secretary of Health and Human Services; and Arthur Hull Hayes, Jr., Commissioner of the U. S. Food and Drug Administration, Defendants,

The United States of America, Counterplaintiff.

Nos. 82 C 4155, 82 C 4156.

United States District Court, N. D. Illinois, E. D.

Oct. 5, 1982.

Kirkpatrick W. Dilling, Dennis M. Gronek, Diana J. Dilling, Dilling, Dilling & Gronek, Chicago, Ill., for plaintiffs and counterdefendants.

Dan K. Webb, U. S. Atty. by Thomas P. Walsh, Asst. U. S. Atty., Chicago, Ill., Don O. Burley, Consumer Affairs Section, Antitrust Div., U. S. Dept. of Justice, Washington, D. C., Stephen D. Terman, Associate Chief Counsel for Enforcement, F.D.A., Rockville, Md., for defendants and counterplaintiffs.

## MEMORANDUM AND ORDER

BUA, District Judge.

### STATEMENT OF THE CASE

The instant litigation concerns those products which have become known generically as "starch blockers."[1] The plaintiffs, manufacturers and distributors of the products, initiated the lawsuit seeking a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 and requesting this Court to declare that starch blockers are "foods" under 21 U.S.C. § 321(f) and not "drugs" as defined by 21 U.S.C. § 321(g). The lawsuit was initiated in response to the classification by the Food and Drug Administration (FDA) of the products as "drugs" and to the agency's request that all such products be removed from the market until FDA approval was received. Absent substantial scientific evidence demonstrating that the product was generally recognized as safe and effective, the FDA regarded the product as a "new drug" under 21 U.S.C. 321(g)

and considered further interstate distribution of the product a violation of 21 U.S.C. § 355(a).

The defendants counterclaimed seeking a temporary restraining order enjoining the plaintiffs from further distributing starch blockers in interstate commerce in violation of the Federal Food, Drug, and Cosmetic Act, ("the Act"), 21 U.S.C. §§ 301–392. The motion for the temporary restraining order was denied and a hearing was held on defendants' motion for a preliminary injunction. At the close of the hearing, the parties stipulated to advancing the hearing as a trial on the merits.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court, having heard the testimony of the witnesses and having examined the exhibits introduced in evidence does hereby make the following findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.[2]

"Starch blocker" is the generic name for the group of products manufactured from the protein contained in a certain type of raw kidney bean. The product is sold in both tablet and capsule form.

It is claimed that the protein which makes up the product acts to prevent the digestion of starch. Specifically, it is claimed, the protein acts as an alpha-amylase inhibitor. Alpha-amylase is an enzyme secreted by the pancreas which is necessary to the digestion of starch. When one or more starch blocker pills are ingested during a meal, the protein acts to prevent the alpha-amylase enzyme from acting, thus allowing the undigested starch to pass from the system. As digestion of starch, a complex sugar, is cited as a cause of weight gain, the passage of starch through the

---

1. The specific names of the products before the Court are, among others, "Carbo-Lite," "American Family Natural Starch Blocker," "Thin-Again," "Nutri-Slim," "Calorex," "Seirolac," "AMI–600M," "Starch Trim," "X-Amyl," "TSI Starch Blocker," "MELVA Starch Blocker," "Best Starch Blocker," "Burket Health Starch Blocker," "Natural Radiance Starch Blocker," and "Health Land Starch Blocker."

2. To the extent that any of the findings of fact included herein are deemed to be conclusions of law, they are hereby adopted as conclusions of law. To the extent that any of the foregoing conclusions of law are deemed to be findings of fact, they are hereby adopted as findings of fact.

system in an undigested form allows the individual taking the starch blocker to consume foods containing starch and high in carbohydrates without the risk of putting on weight.[3]

The safety and effectiveness of the product has yet to be tested by the FDA. As the plaintiffs consider their products to be foods, no testing as required to obtain FDA approval as a new drug has taken place. No new drug application has been filed for these products nor has any investigational new drug exemption been issued pursuant to 21 U.S.C. 355(i).

The central issue in this case involves a determination of whether starch blockers are a drug under 21 U.S.C. § 321(g) or a food under 21 U.S.C. § 321(f). If a drug, the manufacturers of starch blockers would be required to file a new drug application pursuant to 21 U.S.C. 355 and to be regulated as such. The immediate consequence of such a determination would be the issuance of a permanent injunction requiring plaintiffs to remove the product from the marketplace until approved as a drug by the FDA.

Under 21 U.S.C. 321(g)(1)(C), drugs are defined as "... articles (other than food) intended to affect the structure or any function of the body of man..." Foods, on the other hand, are defined as "articles used for food or drink for man..." 21 U.S.C. § 321(f).

Because of the breadth and necessary vagueness of these statutory definitions, it is incumbent upon this Court to formulate usable working definitions for these terms which can be applied to the case at bar. In undertaking such a task, the Court is mindful of the policy requiring liberal construction of the terms consistent with the overriding purpose of the Act—the protection of public health. *U. S. v. Bacto-Unidisk*, 394 U.S. 784, 798, 89 S.Ct. 1410, 1418, 22 L.Ed.2d 726 (1969). As the Court there noted, "...

the 'natural way' to draw the line (between a food and a drug) 'is in light of statutory purpose,'" 394 U.S. at 799, 89 S.Ct. at 1418, *quoting S.E.C. v. Ralston Purina Co.,* 346 U.S. 119, 124–5, 73 S.Ct. 981, 984–85, 97 L.Ed. 1494 (1953).

The plaintiffs have urged the Court to make its determination of whether starch blockers are foods or drugs based upon the source from which the product has been derived and, apparently, upon the common perception of the category into which the main component of the product falls. Thus, it is argued that, as the product is manufactured from beans, indisputably a natural food, and is made up of mere protein, a substance often regarded as a food, the product must be considered a food. This argument must, however, be rejected.

■ That a product is naturally occurring or derived from a natural food does not preclude its regulation as a drug. *See, e.g., United States v. "Vitasafe Formula M",* 226 F.Supp. 266 (D.N.J.1964), reversed on other grounds, 345 F.2d 864 (3d Cir. 1965); *United States v. Nutrition Service, Inc.,* 227 F.Supp. 375 (W.D.Pa.1964); *United States v. 250 Jars, Etc., of U. S. Fancy Pure Honey,* 218 F.Supp. 208 (E.D.Mich.1963), aff'd. 344 F.2d 288 (6th Cir. 1965). Nor does the fact that an item might, in one instance, be regarded as a food prevent it from being regulated as a drug in another. *National Nutritional Foods Association v. Mathews,* 557 F.2d 325 (2d Cir. 1977). Therefore, that the product is derived from a natural food and is comprised of vegetable protein does not necessitate a finding by the Court that starch blockers are foods.[4]

■ Resolution of the issue before the Court must come down to a question of intended use. If a product is intended by the user and the manufacturer or distributor to be used as a drug, it will be regulated

---

**3.** Advertising for the products often note that bread, pasta, potatoes, rice, bananas, corn, etc. may be consumed without worry when taken with starch blocker pills.

**4.** Plaintiffs contention that all proteins must be considered foods is not accepted by the Court. As has been pointed out in defendants' briefs, insulin is a protein which few would consider a food. Hair is also a protein, but categorization of it as a food would be difficult indeed.

as such. Conversely, if it is intended that the product be used as a food, it will be so considered. 557 F.2d at 333.

By its language, the Act contemplates that "food" refers only to those items actually and solely "used for food." 21 U.S.C. § 321(f)(1). Expert testimony received in the instant case leads the Court to conclude that substances used for food are those consumed either for taste, aroma, or nutritional value. It is clear that starch blockers are used for none of these purposes. The user of starch blockers uses them as a drug, not as a food.

It cannot be said that the manufacturers or sellers of starch blockers intend the product to be used as food. The intent of the vendor in the sale of the product to the public is a key element in determining which statutory definition a product falls into. *National Nutritional Foods Association v. Mathews,* 557 F.2d 325, 333 (2nd Cir. 1977). The FDA may consider the manufacturers subjective intent as well as actual therapeutic intent based upon objective evidence in this determination. 557 F.2d at 334. Additionally, regardless of the actual physical effect of the product, for purposes of the Act it will be deemed a drug where the labeling and promotional claims show intended uses bringing the product within the drug definition. *United States v. An Article ... Consisting of 216 Cartoned Bottles of ... "Sudden Change,"* 409 F.2d 734, 739 (2nd Cir. 1969).

The Court finds that the intent in the marketing of the product is that starch blockers be used as a drug. Starch blockers are marketed for treatment of an overweight condition. Although it has been recognized that products used for overweight could be in the category of foods for "special dietary use," 21 C.F.R. 105.3, starch blockers are not marketed for taste or aroma or for their nutritional value. Instead, they are to be used for treatment of a certain condition. Clearly they are intended to be used as a drug.

That starch blockers are to be considered a drug may further be gleaned from an examination of the promotional materials and labeling associated with the products. The various materials claim the product to be "totally natural and safe," "absolutely safe and exceptionally effective ... no side effects," and "tested; approved." Additionally, the user is warned to "keep out of reach of children." Finally, it is claimed that use of starch blockers can aid in prevention of "degenerative diseases, including arteriosclerosis, arthritis, and diabetes mellitus." Claims such as these are clearly claims normally associated with drugs and not food products. Hence, the conclusion that the products were intended to act as a drug and be considered as such by the public is unavoidable.

The Court has heard testimony from various physicians and scientists that the use of starch blockers could have serious side effects.[5] While this Court is in no position to make a final judgment regarding the safety of this product, the possibility of harm requires this Court to classify the product in the interest of public safety in accord with the purposes underlying the Act. *U. S. v. Bacto-Unidisk,* 394 U.S. 784, 798, 89 S.Ct. 1410, 1418, 22 L.Ed.2d 726 (1969). Classification of the product as a drug would best serve such purposes.

## ORDER

The Court therefore concludes that starch blockers are drugs under 21 U.S.C. § 321(g)(1)(C). Having shipped these new drugs in interstate commerce without the required approved new drug applications on file, plaintiffs have violated 21 U.S.C. §§ 331(d) and 355(a). The Court is thus compelled to issue a permanent injunction pursuant to 21 U.S.C. § 332(a) requiring plaintiffs to refrain from (1) introducing or delivering for introduction into interstate commerce any such articles of drug unless

---

**5.** According to the testimony received, side effects from the use of starch blockers may include, among other things, an increase in the size of the pancreas, diarrhea, cramps, and a change in the bacteria present in the bowel, a condition which produces a syndrome in which the individual may become very ill and confused.

and until (i) an approved application filed pursuant to 21 U.S.C. 355(b) is effective with respect to such drug, (ii) a proper notice of claim of investigational exemption is filed pursuant to 21 U.S.C. 355(i) and 21 C.F.R. 312.1, or (iii) the Food and Drug Administration has advised plaintiffs that the drug is not a "new drug"; (2) manufacturing, processing, packing, and labeling such articles of drug after shipment of one or more of their components in interstate commerce unless and until (i) an approved application filed pursuant to 21 U.S.C. 355(b) is effective with respect to such drug, or (ii) a proper notice of claim of investigational exemption is filed pursuant to 21 U.S.C. 355(i) and 21 C.F.R. 312.1, or (iii) the Food and Drug Administration has advised plaintiffs that the drug is not a "new drug."

Plaintiffs are further ordered to (i) destroy, under the supervision of authorized employees of the Food and Drug Administration, all articles of drug containing an alpha-amylase inhibitor falling under the category of starch blocker including, but not limited to those products mentioned in footnote 1, supra; (ii) to permit duly authorized Food and Drug Administration representatives to make inspections, including the building, pertinent equipment, finished and unfinished materials, containers, labeling and all records relating to the distribution of articles of drug as are deemed necessary in order to determine that the requirements set forth herein have been met. Such inspection shall be authorized upon presentation of a copy of this injunction and appropriate credentials and the giving of a written notice specifying that such inspection is being requested pursuant to the order of this Court.

The clerk is accordingly directed to enter judgments against the plaintiffs, Nutrilab, Inc.; Naturalife-Ecovite Laboratories, Inc., d/b/a Paragon Laboratories; Jean Pierre Products, Inc., and Natural Research, and Bio-Tech Laboratories, Inc.; Vita-Lite Laboratories, Inc.; Dynavest; J. John Marshall, Ph.D.; J. Robert Lemon, R.Ph., and Ronald F. Frantz, and for the defendants, Richard S. Schweiker, U. S. Secretary of Health and Human Services, and Arthur Hull Hayes, Jr., Commissioner of the U. S. Food and Drug Administration, and the counterplaintiff, the United States of America, pursuant to Rule 58 of the Federal Rules of Civil Procedure.

Pursuant to Rule 52(b) of the Federal Rules of Civil Procedure, the Court reserves the right to amend its findings of fact and/or its conclusions of law or to make additional findings of fact and/or conclusions of law upon motion of any party made no later than ten days from this day, and the Court may amend the judgments accordingly.

IT IS SO ORDERED.