The **NATIONAL NUTRITIONAL FOODS ASSOCIATION and Solgar, Co., Inc.,** Plaintiffs-Appellants,

v.

**F. David MATHEWS, Secretary of Health, Education and Welfare and Alexander M. Schmidt, Commissioner of Food and Drugs, Defendants-Appellees.**

No. 561, Docket 76–6135.

United States Court of Appeals, Second Circuit.

Argued March 25, 1977.

Decided June 7, 1977.

---

Milton A. Bass, New York City (Bass, Ullman & Lustigman and Jacob Laufer, New York City, on the brief), for plaintiffs-appellants.

Naomi Reice Buchwald, Asst. U. S. Atty., S. D. N. Y., New York City (Robert B. Fiske, Jr., U. S. Atty., Samuel J. Wilson, Asst. U. S. Atty., S. D. N. Y., New York City, and Stephen H. McNamara, Office of Gen. Counsel, Dept. of Health, Education and Welfare, Washington, D. C., on the brief), for defendants-appellees.

Before ANDERSON and MESKILL, Circuit Judges, and MARKEY, Chief Judge, U. S. Court of Customs and Patent Appeals.*

Robert P. ANDERSON, Circuit Judge:

Plaintiffs-appellants, producers and vendors of vitamin preparations, appeal the dismissal of their action seeking declaratory and injunctive relief against regulations promulgated by the Food and Drug Administration (FDA) which classified preparations of Vitamins A and D in excess of

10,000 IU (international units) per dosage unit and 400 IU per dosage unit, respectively, as "drugs" under § 201(g)(1) of the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 321(g)(1), and which restricted them to prescription sale under § 503(b)(1) of the Act, 21 U.S.C. § 353(b)(1). 21 C.F.R. §§ 250.109 and 250.110 (1976) (originally promulgated as parts 3.94 and 3.95). The district court upheld the regulations as not "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law" under the standard of review prescribed by 5 U.S.C. § 706(2)(A). *National Nutritional Foods Ass'n v. Mathews*, 418 F.Supp. 394 (S.D.N.Y.1976).

This is the third time that this case has been on appeal in this court. We affirmed the district court's denial of preliminary injunctive relief in *National Nutritional Foods Association v. Weinberger*, 491 F.2d 845 (2d Cir. 1973), aff'g 366 F.Supp. 1341 (S.D.N.Y.1973). The regulations sought to be declared invalid, therefore, have been in effect since October 1, 1973. On the second appeal, the district court had dismissed the complaint finding that the regulations satisfied the "arbitrary or capricious" standard of review. *National Nutritional Foods Association v. Weinberger*, 376 F.Supp. 142 (S.D.N.Y.1974), remanded, 512 F.2d 688 (2d Cir.), cert. denied sub nom., *National Nutritional Foods Association v. Mathews*, 423 U.S. 827, 96 S.Ct. 44, 46 L.Ed.2d 44 (1975). On remand the district court was instructed to:

". . . conduct an *Overton*-type hearing (including such affidavits or testimony as to the Commissioner's reasoning as the court deems necessary) for the purpose of determining whether, upon the entire administrative record before the Commissioner, which the court should scrutinize, *Silva v. Lynn*, 482 F.2d 1282 (1st Cir. 1973), the Commissioner acted rationally in classifying the higher dosage levels as a 'drug' within the meaning of § 201(g) of the Act, 21 U.S.C. § 321(g)." 512 F.2d at 703.

* Sitting by designation.

On this appeal from the district court's dismissal following remand, plaintiffs contend that the district court did not comply with this court's mandate on remand, and that it erred in upholding the classification of the regulated levels of Vitamins A and D, as drugs.

Acting under the rule-making power vested in the Secretary of Health, Education and Welfare, § 701(a) of the Act, 21 U.S.C. § 371(a), and delegated to the Commissioner of Food and Drugs (Commissioner), 21 C.F.R. § 2.120(a)(1), the latter, on December 14, 1972, announced his proposal to adopt regulations restricting the sale of Vitamins A and D in dosages exceeding 10,000 IU and 400 IU, respectively, to prescription sales. 37 Fed.Reg. 26618. Employing the notice-and-comment procedure of the Administrative Procedure Act, 5 U.S.C. § 553(c), the Commissioner solicited comments from interested persons concerning the proposed regulations. Over 2,500 written comments were received. On August 2, 1973, the Commissioner summarized the comments, answered the criticisms of the proposed regulations, and, upon determining that the regulations were in the public interest and should be adopted, ordered that they become effective on October 1, 1973.[1] 38 Fed.Reg. 20723.

During the period when the proposed Vitamins A and D regulations were under consideration by the FDA, formal administrative hearings were held on proposed labeling statements and standards of identity for "Food for Special Dietary Uses." These regulations, covering the vast array of vitamin and mineral preparations, were adopted as parts 80 and 125 of 21 C.F.R. on August 2, 1973, 38 Fed.Reg. 20708–18, 20730–40, to become effective January 1, 1975. As part of the FDA's regulatory scheme for the sale of vitamin and mineral

dietary supplements, the Commissioner promulgated new U.S. Recommended Daily Allowances for the vitamins and minerals considered essential to human nutrition and for which there was available scientific evidence to show the level of ingestion nutritionally necessary. 21 C.F.R. § 80.1(f)(1). The U. S. RDA upper limits for Vitamin A is 2,500 IU for children under four years of age, 5,000 IU for adults, and 8,000 IU for pregnant and lactating women. The upper limit for Vitamin D is 400 IU for all age groups. As part of the general Dietary Supplement regulations, the FDA determined that all preparations containing more than the upper limit of the U. S. RDA per serving for any vitamin or mineral on the list is a "drug," 21 C.F.R. § 125.1(h),[2] thus subjecting such products to the rigorous provisions of subchapter V of the Act. When the Commissioner promulgated the specific Vitamins A and D regulations, therefore, the levels restricted to prescription sale under these regulations were already denominated "drugs" under the general Dietary Supplement regulations.

In *National Nutritional Foods Association v. Food & Drug Administration*, 504 F.2d 761 (2d Cir. 1974), *cert. denied*, 420 U.S. 946, 95 S.Ct. 1326, 43 L.Ed.2d 424 (1975), this court, on a petition to review the general dietary supplement regulations under § 701(f) of the Act, 21 U.S.C. § 371(f), determined that the evidence supporting 21 C.F.R. § 125.1(h), classifying as "drugs" all vitamin and mineral preparations containing dosages in excess of the U. S. RDA's upper limits, was insufficient to bring such preparations within the statutory definition of "drug" in § 201(g) of the Act, 21 U.S.C. § 321(g). *Id.* at 788–89. Prior to this ruling, the district court in this separate review proceeding of the Vitamins A and D

---

1. There are only minor differences between the proposed regulations and the version finally adopted. For a more detailed discussion of the promulgation of these regulations, *see National Nutritional Foods Ass'n v. Weinberger*, 512 F.2d 688, 691–93 (2d Cir.), *cert. denied sub nom., National Nutritional Foods Association v. Mathews*, 423 U.S. 827, 96 S.Ct. 44, 46 L.Ed.2d 44 (1975).

2. The regulations contained exceptions for conventional foods containing naturally-occurring amounts in excess of the U. S. RDA limits and for special dietary foods such as infant formulas.

regulations had concluded that the regulations were valid. *National Nutritional Foods Association v. Weinberger, supra,* 376 F.Supp. at 149. In so doing, the district court reaffirmed its finding on denial of preliminary injunctive relief that high-potency Vitamins A and D products were "squarely within" the statutory definition of "drugs." *National Nutritional Foods Association v. Weinberger, supra,* 366 F.Supp. at 1346.

This court's decision to remand this case for an *Overton*-type hearing was brought about by intervening invalidation of the 21 C.F.R. § 125.1(h) "drug" classification of preparations in excess of the U. S. RDA in *National Nutritional Foods Ass'n v. FDA, supra* (504 F.2d 761), the failure of the Commissioner fully to state the rationale supporting the classification of Vitamins A and D at the regulated levels as "drugs," and the incomplete nature of the administrative record provided in support of the regulations. *National Nutritional Foods Ass'n v. Weinberger, supra,* 512 F.2d at 701–03. The only substantive issue for the district court to resolve on remand of the present case was whether the Commissioner's classification of high-potency Vitamins A and D preparations was in accordance with the statutory definition of a "drug" and whether the record established that the classification was not arbitrary or capricious and was in accordance with law.

This court directed the district court to "scrutinize" the entire administrative record, and to give the Commissioner, either through affidavit or testimony, "as the court deems necessary," an opportunity to present his complete reasoning underlying the drug classification. On remand, plaintiffs argued that the Commissioner should be subject to deposition and called as a witness to testify on the matter. Plaintiffs also pressed for full disclosure of all documents, including the early drafts and intra-agency memoranda, relating to the proposal and adoption of the regulations. The district court denied plaintiff's requests. The Government submitted the Commissioner's affidavit explaining his best recollection of his reasons for classifying high-potency quantities of Vitamins A and D, as drugs. After deletion of certain references to material, not part of the record, a revised affidavit was submitted which the district court accepted as the complete statement of reasons, the lack of which had necessitated the remand. The only other addition to the record was a collection of miscellaneous letters and documents relating to the regulations that were either inadvertently omitted or were considered by the FDA not to be part of the record, because they either postdated the final promulgation or antedated the original proposal of the regulations. The Government represented to the district court that this was the entire administrative record. A group of intra-agency communications and drafts of the regulations was not made part of the record after the district court examined the documents *in camera* and ruled that they were exempt from disclosure under the Freedom of Information Act exception for intra-agency memoranda, 5 U.S.C. § 552(b)(5), and that, in any event, plaintiffs had not shown sufficient justification to overcome the agency's claim of privilege.[3]

As the district court noted, a remand to conduct an *Overton* -type hearing is not an open invitation to probe the mental processes of the Commissioner. In *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), the Supreme Court was presented with an agency action made on an administrative record that had not been produced in the review proceedings in the district court. In remanding the case to the district court for "plenary review" of the Secretary of Transportation's decision "based on the full administrative record that was before him when he made his decision," the Court directed that, if the record did not disclose the rationale underlying the agency action or the factors that were considered in the decision, the district court might find it necessary to require some explanation from the Secretary. *Id.* at 420, 91 S.Ct. at 825.

---

3. These documents have also been submitted to this court for *in camera* inspection.

The Court went on to indicate that such further explanation might take the form of testimony by the administrative officials but warned that such probing of the administrators' mental processes was usually to be avoided and noted that when contemporaneous administrative findings were made, "There must be a strong showing of bad faith or improper behavior before such inquiry may be made." *Id.,* citing *United States v. Morgan,* 313 U.S. 409, 422, 61 S.Ct. 999, 85 L.Ed. 1429 (1941). In *Camp v. Pitts,* 411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973), the Court, in explaining the scope of an *Overton* -type hearing, stated that further explanation of administrative action by the officials involved in the decision could be by affidavit and is appropriate only when the explanation in the record is so deficient as to frustrate effective judicial review. *Id.* at 142–43, 93 S.Ct. 1241.

In remanding to the district court for the addition to the record of the relevant details of the Commission's basis for classifying high-potency Vitamins A and D preparations as drugs, this court left the form that such further explanation should take, to the sound discretion of the trial court. *National Nutritional Foods Ass'n v. Weinberger, supra,* 512 F.2d at 703.

When the Commissioner adopted the Vitamins A and D regulations, he concluded that the available evidence showed that the U. S. RDA upper limits were adequate for all known nutritional needs; and, in view of the fact that there was no evidence to establish a food value or nutritional use for Vitamins A and D at higher levels, the ingestion of these vitamins at the regulated levels is "appropriate only for therapeutic uses and thus are properly classed as drugs." 38 Fed.Reg. 2073 (Aug. 2, 1973). The Commissioner based the drug classification for all vitamin and mineral preparations in excess of the U. S. RDA contained in 21 C.F.R. § 125.1(h) solely upon lack of nutritional usefulness for most people. This court, however, held in the course of invalidating the general drug classification in § 125.1(h), that "demonstrated uselessness as a food for most people" is an insufficient basis upon which to establish a drug classification under § 201(g)(1)(B) of the Act, 21 U.S.C. § 321(g)(1)(B). *National Nutritional Foods Ass'n v. FDA, supra,* 504 F.2d at 789.[4]

Plaintiffs argued on the appeal of the district court's first dismissal of this case that the Vitamin A and D regulations were based upon the reasoning invalidated in *National Nutritional Foods Ass'n v. FDA, supra* (504 F.2d 761), and thus, *a fortiori,* were not promulgated in accordance with law. In proposing the Vitamin A and D regulations, however, the Commissioner indicated that an additional basis for the drug classification was the widespread promotion of the products for therapeutic uses. The Commissioner did not fully develop this rationale at the time of the promulgation of the regulations, and this court, therefore, was not in a position to evaluate whether the evidence of promotion for therapeutic uses was sufficient to render the drug classification not arbitrary or capricious and in accordance with the statutory definition of a drug. The Commissioner's affidavit, filed upon remand, explained the ambiguous reference to widespread thera-

4. Since the decision in *National Nutritional Foods Association v. Food & Drug Administration,* 504 F.2d 761 (2d Cir. 1974), *cert. denied,* 420 U.S. 946, 95 S.Ct. 1326, 43 L.Ed.2d 424 (1975), Congress enacted § 411 of the Act, 21 U.S.C. § 350, which provides, in relevant part, that except as provided in paragraph (2):

"(B) the Secretary may not classify any natural or synthetic vitamin or mineral (or combination thereof) as a drug solely because it exceeds the level of potency which the Secretary determines is nutritionally rational or useful."

Paragraph (2) renders paragraph (1) inapplicable when a vitamin or mineral is represented for use in the treatment of "specific diseases or disorders" or for use by children or pregnant or lactating women. This section elevates this court's holding in *National Nutritional Foods Association v. Food & Drug Administration, supra* (504 F.2d 761), invalidating 21 C.F.R. § 125.1(h), to an affirmative statutory limitation upon the Commissioner's power to regulate vitamins as drugs and clearly retains "therapeutic intent" as the primary factor in drug classification under § 201(g) of the Act, 21 U.S.C. § 321(g).

peutic promotion and indicated the materials in the administrative record relied upon by the Commissioner to support his reasoning in this regard. In view of the fact that the Commissioner's affidavit supplied the supplementation of the record that was necessary for effective judicial review, the district court did not abuse its discretion in denying plaintiffs' motion to take the Commissioner's deposition and to have him called as a witness. As above stated, requiring Administrative officials to testify in a judicial review proceeding is usually to be avoided. *United States v. Morgan, supra,* 313 U.S. at 422, 61 S.Ct. 999; *Bank of Commerce of Laredo v. City National Bank of Laredo,* 484 F.2d 284, 287–88 (5th Cir.), *cert. denied,* 416 U.S. 905, 94 S.Ct. 1609, 40 L.Ed.2d 109 (1974); *cf., National Nutritional Foods Ass'n v. FDA,* 491 F.2d 1141, 1144–45 (2d Cir.), *cert. denied,* 419 U.S. 874, 95 S.Ct. 135, 42 L.Ed.2d 113 (1974).

■ Moreover, we cannot say, after our own review of the memoranda, that the district court abused its discretion or otherwise committed error in refusing to compel the FDA to disclose the deliberative intra-agency memoranda which preceded the formal proposal of the Vitamins A and D regulations. The district court reviewed these documents *in camera* and determined that they were within the scope of the Government's deliberative privilege and not subject to disclosure under the circumstances of this case. We are satisfied that it is unnecessary further to discuss the plaintiffs' general contentions here, concerning the scope of this privilege and the relevance of intra-agency memoranda in administrative review cases, which are to be reviewed on a formal administrative record, particularly in view of the disposition of this case, *infra.* In the course of these proceedings the Commissioner has waived any reliance, even if he could attempt so to rely, upon any supportive reasoning or factual material contained in these pre-proposal, intra-agency memoranda. We conclude that, under the standard enunciated by the Supreme Court in *Citizens to Preserve Overton Park v. Volpe, supra,* the record in the case, as supplemented by the Commission-er's affidavit furnished on remand, sufficiently discloses the rationale underlying the administrative body's action and the factors considered in its decision. Its error lay in determining that dosage units of more than 10,000 IU of Vitamin A and 400 IU of Vitamin D are, on the facts of this case, properly classified as drugs under § 201(g) of the Act (21 U.S.C. § 321(g)). Consequently the FDA's holding in this case was arbitrary and capricious and not in accordance with law.

■ When this case was previously remanded by us to the district court, we said, ". . . a serious question is raised as to whether the Commissioner, in concluding that the higher level dosage forms of Vitamins A and D are 'drugs', acted 'in accordance with law.'" 512 F.2d at 701. The relevant portions of § 201(g) of the Act, 21 U.S.C. § 321(g), define a drug as:

"(g)(1) the term 'drug' means (A) articles recognized in the official United States Pharmacopoeia, official Homoeopathic Pharmacopoeia of the United States, or official National Formulary, or any supplement to any of them; and (B) articles intended for use in the diagnosis, cure, mitigation, treatment or prevention of disease in man or other animals . . ."

In the statement announcing the proposal of the Vitamins A and D regulations and in the one accompanying their adoption, the Commissioner did not rely upon the recognition of these preparations in the above named publications as the basis of the drug classification. Rather, the Commissioner determined that the circumstances surrounding the use of Vitamins A and D at the regulated levels indicated an intended therapeutic use under § 201(g)(1)(B), 21 U.S.C. § 321(g)(1)(B). The vendors' intent in selling the product to the public is the key element in this statutory definition. *Rutherford v. United States,* 542 F.2d 1137, 1140 (10th Cir. 1976); *National Nutritional Foods Ass'n v. FDA, supra,* 504 F.2d at 789; *United States v. An Article . . . Consisting of 216 Cartoned Bottles . . .*

"Sudden Change," 409 F.2d 734, 739 (2d Cir. 1969); United States v. Hohensee, 243 F.2d 367, 370 (3rd Cir. 1956), cert. denied, 353 U.S. 976, 77 S.Ct. 1058, 1 L.Ed.2d 1136 (1957); Hanson v. United States, 417 F.Supp. 30, 34 (D.Minn.), aff'd, 540 F.2d 947 (8th Cir. 1976); United States v. 2 Cartons, More or Less, No. 26 Formula GM, 132 F.Supp. 569, 573 (S.D.Cal.1952).

■ In determining whether an article is a "drug" because of an intended therapeutic use, the FDA is not bound by the manufacturer's subjective claims of intent but can find actual therapeutic intent on the basis of objective evidence. National Nutritional Foods Ass'n v. FDA, supra, 504 F.2d at 789. Such intent also may be derived or inferred from labeling, promotional material, advertising, and "any other relevant source." See, e. g., United States v. An Article . . . Consisting of 216 Cartoned Bottles . . . "Sudden Change," supra, 409 F.2d at 739; Hanson v. United States, supra, 417 F.Supp. at 35; United States v. 250 Jars, etc., of U. S. Fancy Pure Honey, 218 F.Supp. 208, 211 (E.D.Mich.1963), aff'd, 344 F.2d 288 (6th Cir. 1965). In remanding this case, this court expressly indicated that evidence that Vitamins A and D at the regulated levels were used "almost exclusively for therapeutic purposes" when coupled with lack of a recognized nutritional use, would be sufficient to show that high dosage Vitamins A and D products were intended for use in the treatment of disease. 512 F.2d at 703.

■ In proposing the regulations, the Commissioner emphasized the potential for toxicity and the widespread promotion of the intake of high doses of Vitamins A and D to cure a variety of ills.[5] To show objective therapeutic intent, the Commissioner's affidavit submitted on remand relied upon three factors: (1) widespread promotion to the public in the use of high potency Vita-

mins A and D preparations for the treatment of various ailments; (2) lack of recognized nutritional usefulness; and (3) potential for toxicity from the ingestion of large doses of these vitamins over extended periods of time.

Potential for toxicity was cited in the statements of proposal and adoption of the regulations as supporting the limitation of high-dosage Vitamins A and D preparations to prescription sale in the interest of public safety. In his affidavit, the Commissioner admitted that "[i]n promulgating these regulations, concern over the public harm that could be done by these high potency therapeutic preparations weighed more heavily upon my mind than any other single factors."[6] The Commissioner also indicated that evidence of toxicity was further objective evidence of therapeutic intent because it was unreasonable to believe that one could intend that a toxic product be used as a food.

■ Plaintiffs assert that toxicity is irrelevant to the issue of therapeutic intent and, although the key element in determining that a drug should be limited to prescription use under § 503(b) of the Act, 21 U.S.C. § 353(b), it has no bearing upon whether an article is a drug. The Government argues, on the other hand, that toxicity is relevant to therapeutic intent and that the Commissioner must make the decision of whether there should be a regulation which classifies an article as a food or as a drug, for the purposes of the Act. Although an article may be recognized as a food, this does not preclude it from being regulated as a drug. Rutherford v. United States, supra, 542 F.2d at 1140; Hanson v. United States, supra, 417 F.Supp. at 35. The determination that an article is properly regulated as a drug, however, is not left to the Commissioner's unbridled discretion to act to protect the public health but must

5. This court determined that there was ample evidence that Vitamins A and D can be toxic if consumed in large quantities over a period of time and, therefore, upheld the Commissioner's determination under § 503(b) of the Act as not being arbitrary and capricious. 512 F.2d at 704. To limit an article to prescription sale

under § 503(b), however, it must first be properly classified as a drug under § 201(g) of the Act, 21 U.S.C. § 321(g).

6. Affidavit of Alexander M. Schmidt, M.D., Commissioner of Food and Drugs, filed in the district court on February 20, 1976, at ⸢ 7, p. 8.

be in accordance with the statutory definition.[7] Toxicity is not included as an element in the statutory definition of a drug. It is relevant as a factor supporting the Commissioner's classification under § 201(g)(1)(B), but only to the extent that it constitutes objective evidence of therapeutic intent. Toxicity is cited by the Commissioner as constituting objective evidence of "something more" than lack of nutritional usefulness in an attempt to distinguish the general drug classification invalidated in *National Nutritional Foods Ass'n v. FDA, supra,* 504 F.2d at 789. Such evidence, however, only presents a further indication that the excessive intake of Vitamins A and D may not be nutritionally useful and does not provide the objective evidence of therapeutic intent necessary to support these regulations.

There is no evidence in the administrative record that the manufacturers and vendors of Vitamins A and D preparations, at the regulated dosages, represent through labeling, promotional materials, or advertising that these products are effective in the cure or treatment of disease. They are sold as "dietary supplements."

 The district court dismissed the complaint on the ground that the record

evidence of lack of nutritional usefulness, when coupled with the evidence of widespread promotion of high-dosage preparations of Vitamins A and D for therapeutic purposes, established that the drug classification was not arbitrary or capricious. The district court relied upon three sources for its determinations that there was widespread promotion of these products for therapeutic purposes: (1) the Commissioner's experience;[8] (2) the medical and popular literature in the record advocating the therapeutic use of these vitamins; and (3) the large number of comments to the proposed regulations which indicated a desire to continue using Vitamins A and D for therapeutic purposes.[9] None of the promotions for therapeutic use in the record was attributed to the manufacturers or vendors.

 The main issue on this appeal is whether the evidence of the extensive use of large doses of Vitamins A and D to treat or prevent diseases and the promotion of such usage by persons not associated with the manufacturers or vendors establishes such widespread therapeutic use at the regulated levels as to overcome the plaintiffs' claim of the lack of an intended use to cure or prevent disease and thus justifies the Commissioner's determination.

7. The Government contends in its brief that the legislative history of the recent enactment of § 411 of the Act, 21 U.S.C. § 350 (discussed at note 4, *supra*), establishes that Congress sanctioned the regulation of vitamins and minerals that might be toxic under the drug provisions of the Act. Although the comments of individual Senators and Congressmen mention that § 411 was not intended to limit the FDA's authority to treat toxic vitamins as drugs, see 121 Cong.Rec. S21857 (Dec. 11, 1975, comments of Senator Schweiker); 122 Cong.Rec. H3245 (April 12, 1976, comments of Congressman Rogers), toxicity, while relevant to a determination of limitation to prescription sale, was not included as an element in classifying an article as a drug. The views of a later Congress as to the construction of a statute adopted by an earlier Congress have "little, if any" significance. *United States v. Mauro,* 544 F.2d 588, 594 (2d Cir. 1976).

8. The FDA can rely upon its experience to support its regulations. *Consumer Union of the United States v. Consumer Product Safety Commission,* 491 F.2d 810, 812 (2d Cir. 1974).

When experience is relied upon to provide a factual basis for a regulation, it must be made part of the administrative record to enable effective judicial review. *National Nutritional Foods Ass'n v. Weinberger,* 512 F.2d 688, 701 n. 11 (2d Cir.), *cert. denied sub nom., National Nutritional Foods Association v. Mathews,* 423 U.S. 827, 96 S.Ct. 44, 46 L.Ed.2d 44 (1975). The Commissioner's experience relied upon in this case is a general awareness of the "numerous and widespread" therapeutic usages for high dosage Vitamins A and D preparations. Affidavit, *supra* note 6, at ¶ 5, pp. 4–5. This experience was not made part of the administrative record and, therefore, cannot provide factual support for the Commissioner's conclusion that Vitamins A and D preparations in dosage units of 10,000 IU and 400 IU, respectively, are objectively intended for therapeutic use.

9. A representative sampling of the documents indicating a therapeutic usage is reprinted as an appendix to the district court opinion. 418 F.Supp. at 401–03.

The Commissioner admits that below the stated levels of potency, Vitamins A and D are foods. The evidence relied upon to show therapeutic intent, therefore, must be related to the potency level chosen to differentiate between the use of Vitamins A and D as foods and the use of these vitamins as drugs. The administrative record clearly establishes that the factors involved in choosing the levels at which Vitamins A and D become drugs were solely related to the Commissioner's fear of potential toxic effect and his belief that the ingestion of vitamins at levels above the U. S. RDA is not nutritionally useful. No further record evidence has been produced on the remand to show that the 10,000 IU and 400 IU levels were chosen because at those potencies, consumption of them is almost exclusively for therapeutic purposes. A sampling of the comments submitted to the FDA after publication of the proposed regulations reveals that people believe that a wide range of doses of these vitamins are therapeutically useful. A large group of individuals indicated that they ingested these vitamins at various dosages solely to supplement their daily diet in the belief that more Vitamins A and D were needed to maintain optimal health than the upper limits in the U. S. RDA.

In remanding this case, this court suggested that proof in the record demonstrating that, at the 10,000 IU and 400 IU levels, respectively, these vitamins were taken "almost exclusively" for therapeutic purposes, would tend to show that the regulations were not arbitrary or capricious. There was no evidence, however, supporting the Commissioner's conclusion that, when sold at the regulated, *i. e.* prescription, levels, therapeutic usage of these vitamins so far outweighed their use as dietary supplements, it showed an objective intent that these products were used in the mitigation and cure of diseases. This claim furnished no contradiction to the charge that the FDA's regulations are arbitrary and capricious and not in accordance with law.

Moreover, the potency level chosen for drug classification was based upon factors that are not relevant to the statutory definition of a drug. Although the Commissioner's application of the statutory provision is to be given great weight, *see NLRB v. Hearst Publications,* 322 U.S. 111, 130–32, 64 S.Ct. 851, 88 L.Ed. 1170 (1944), the statutory provision at issue here strictly limits the FDA's authority to regulate items as drugs to those that fall within the specific provision of § 201(g)(1)(B). The drug definition is to be given a liberal interpretation in light of the remedial purposes of the legislation, *see, United States v. An Article of Drug . . . Bacto-Unidisk,* 394 U.S. 784, 792, 798, 89 S.Ct. 1410, 22 L.Ed.2d 726 (1968), but when an FDA determination that an article is a "drug" is so directly in conflict with the statutory definition, it must be invalidated as arbitrary and capricious and not in accordance with law. *See, National Nutritional Foods Ass'n v. FDA, supra,* 504 ·F.2d at 789 n. 35.

The Commissioner also seeks to justify the Vitamins A and D regulations on the basis of § 201(g)(1)(A), 21 U.S.C. § 321(g)(1)(A), which defines as drugs, articles "recognized" in the United States Pharmacopoeia (USP) or National Formulary (NF). Both Vitamins A and D are included in the USP and NF. The Eighteenth Revision of the USP, official from September 1, 1970, listed the usual daily dosage of Vitamin A for prophylactic uses at 5,000 U.S.P. vitamin A units [10] and for therapeutic uses at 25,000 U.S.P. vitamin A units. For Vitamin D, the respective daily dosages were 400 U.S.P. vitamin D units for prophylactic uses and 1,200 U.S.P. vitamin D units for therapeutic uses. Olive oil and salt are also included within the pages of these compendia. To construe § 201(g)(1)(A) so as to grant the Commissioner the power to regulate as drugs every item mentioned in the USP and NF solely on the basis of such inclusion would give

---

**10.** The "U.S.P. units" in the United States Pharmacopoeia are treated by the FDA as substantially equivalent to the "international units" in the regulations for both Vitamins A and D.

the FDA virtually unlimited discretion to regulate as drugs a vast range of items. In *National Nutritional Foods Ass'n v. FDA, supra* (504 F.2d 761), the court concluded that a claim that a vitamin is a drug solely because of a listing in the USP and NF "would prove too much, for it would lead to the conclusion that all vitamin and mineral preparations even within the [U. S. RDA] limits are drugs—a position that would run counter to the regulations." 504 F.2d at 789. An administrator's decision under a regulatory statute, such as the Food, Drug, and Cosmetic Act, must be governed by an intelligible statutory principle. *See, National Cable Television Association v. United States*, 415 U.S. 336, 342, 94 S.Ct. 1146, 39 L.Ed.2d 370 (1974); *Hampton & Co. v. United States*, 276 U.S. 394, 409, 48 S.Ct. 348, 72 L.Ed. 624 (1928). If § 201(g)(1)(A) defines as drugs every item included in the USP and NF, the FDA is not being consistent in its treatment of other items similarly recognized. The Commissioner, therefore, has not applied the § 201(g)(1)(A) definition to every item in the compendia. Rather he has singled out for drug classification items included in the USP and NF on the basis of factors, such as toxicity in this case, that are not relevant to the statutory criteria in § 201(g).

The Commissioner admitted in his affidavit that mere inclusion in the USP and NF is an insufficient basis for drug classification after the decision in *National Nutritional Foods Ass'n v. FDA, supra* (504

F.2d 761). that case o and D are recog in the compendia drugs in this case only the recognized food leve Other articles, however, are the compendia at therapeutic l regulated as drugs, for example The Commissioner must, therefor that the conflicting treatment in the lations of items similarly classified in USP and NF is not arbitrary under the applicable criteria. The FDA regulates Vitamin C preparations at the USP's therapeutic level as food. See, 41 F.R. 46156 *et seq.* (Oct. 19, 1976). To justify the regulation of Vitamins A and D as drugs by relying on § 201(g)(1)(A) the Commissioner would have to distinguish his treatment of Vitamin C as food.

In proposing and adopting these regulations for Vitamins A and D, the Commissioner did not rely upon or cite the recognition of these vitamins in the USP and NF. He may not at this late hour on appeal rely upon them as the basis for his drug classification because it is sheer *post hoc* rationalization. *See, Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962); *National Nutritional Foods Ass'n v. FDA, supra*, 504 F.2d at 789.

Inclusion in the USP or NF does not automatically establish that the classifi-

11. The Commissioner indicated his agreement with this court's statement in *National Nutritional Foods Association v. Food & Drug Administration*, 504 F.2d 761 (2d Cir. 1974), *cert. denied*, 420 U.S. 946, 95 S.Ct. 1326, 43 L.Ed.2d 424 (1975), that reliance upon the USP and NF would "prove too much." He went on to state:

"In my judgment, while the Act provides that an article is deemed to be a drug if 'recognized' in the U.S.P. or N.F., a vitamin preparation should nevertheless not be classified as a drug on this basis with respect to a usage which is specifically recognized by these compendia to be a prophylactic (food) usage. Consistent with this principle, the vitamin preparations subject to the regulations *exceed* the levels of potency recognized as 'prophylactic' in the United States Pharmacopoeia and National Formulary."

The Commissioner has admitted therefore, that recognition in the USP and NF does not automatically establish that a vitamin is a drug under § 201(g)(1)(A). Additional steps must be taken by him to justify the classification. The FDA must analyze the purposes for which Vitamins A and D are "recognized" in the USP and NF and make a finding of fact with respect to the level at which they are "recognized" as being used for therapeutic purposes. In this case we do not pass upon the reasonableness of the Commissioner's proposed interpretation of § 201(g)(1)(A); we only note that the agency must first comply with the rule-making procedure to enable this court effectively to review the Commissioner's position regarding drug classification under § 201(g)(1)(A).

g is reason-
̷(1)(A) defini-
classification, the
̷nform with the rule-
̷and, through a clear ex-
̷ationale, state the justifica-
̷eliance upon recognition in the
̷NF.

̷istrict court's dismissal of this ac-
̷s reversed and the case is remanded
̷n directions to enter an order granting
̷ummary judgment in plaintiffs' favor de-
claring 21 C.F.R. §§ 250.09 and 250.10 inval-
id as arbitrary and capricious and not in
accordance with law.

It is so ordered.