**UNITED STATES of America, Plaintiff,**

v.

**TWO PLASTIC DRUMS, MORE OR LESS OF AN ARTICLE OF FOOD, LABELED IN PART: VIPONTE LTD. BLACK CURRANT OIL BATCH NO. BOOSF 039, Etc., Defendants,**

**Traco Labs, Inc., Claimant.**

**No. 88–2398.**

United States District Court, C.D. Illinois, Danville Division.

April 10, 1991.

David Hoff, Asst. U.S. Atty., Danville, Ill., Mary K. Pendergast, Leslie Kux, FDA, Rockville, Md., for plaintiff.

Marc J. Ansel, Erwin Martinkus Cole & Ansel, Champaign, Ill., Robert Ullman, Ste-

ven Shapiro, Bass & Ullman, New York City, for claimant.

## ORDER

BAKER, Chief Judge.

This is an *in rem* seizure action under the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §§ 301—393 (1972 & Supp.1991) (the "Act"). The plaintiff, the United States of America through the Food and Drug Administration, seeks the condemnation and destruction of two drums of black currant oil ("BCO"). The claimant, Traco Labs, Inc., asserts that the drums belong to it and that they cannot be condemned. The FDA has moved for summary judgment pursuant to Fed.R.Civ.P. 56 and Traco objects. The court now denies the FDA's motion.

### Facts

Sometime in 1988, Traco purchased from Viponte Limited Hull, a British company, five drums of BCO and approximately 100,000 gelatin capsules of BCO. In November, 1988, the United States Marshal seized two of the drums of BCO as they travelled through Urbana, Illinois. The FDA subsequently filed a complaint for forfeiture and Traco answered. The FDA claims that BCO is an adulterated food because it is an unsafe food additive. In January, 1991, the FDA moved for summary judgment on its seizure and forfeiture claims.

### Discussion

Federal Rule of Civil Procedure 56(c) provides the standard a district court is to apply when considering motions for summary judgment. According to that rule, summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Summary judgment cannot be granted in favor of a party "who fails to make a showing sufficient to establish the existence of an ele-

ment essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In this case, the court finds that the undisputed evidence does not prove that the FDA is entitled to a judgment as a matter of law.

■ The relevant portions of the Federal Food, Drug and Cosmetic Act are straightforward. 21 U.S.C. § 342 states in pertinent part, "A food shall be deemed to be adulterated—[if it is injurious to health or].... if it is, or it bears or contains, any food additive which is unsafe within the meaning of section 348 of this title." Under section 348, a food additive is presumed to be unsafe unless the Secretary has specifically issued regulations for its use.[1] A food additive is defined as "any substance the intended use of which results or may reasonably be expected to result, directly or indirectly, in its becoming a component ... of any food ... if such substance is not generally recognized, among experts qualified by scientific training and expertise to evaluate its safety, as having been shown through scientific procedures ... to be safe under the conditions of its intended use." 21 U.S.C. § 321(s).

The first step in resolving this motion lies in classifying BCO. To be considered a food additive, the court must find that it meets the two-prong definition of a food additive. *See United States v. An Article of Food (FoodScience Laboratories),* 678 F.2d 735, 737 (7th Cir.1982). First, the court must find that the undisputed evidence demonstrates that the FDA has sustained its burden of showing that the intended use of the BCO which was seized was as a component of food. Second, the court must find that the undisputed evidence demonstrates that Traco has failed to sustain its burden of showing that BCO is generally regarded as safe within the meaning of the statute. If the court finds a factual dispute over either prong, it cannot grant the FDA's motion.

---

1. No such regulations exist for BCO.

■ The court finds that the FDA has failed to sustain its initial burden of demonstrating that the intended use of the seized BCO was as a component of food. In determining what the intended use of a seized product is, the inquiry should focus on the vendor's objective intent. *See National Nutritional Foods Ass'n v. Mathews*, 557 F.2d 325, 333 (2nd Cir.1977); *cf. Nutrilab, Inc. v. Schweiker*, 713 F.2d 335, 337 (7th Cir.1983). Thus, a court should examine a wide range of evidence, including the vendor's stated intent, actual use of the product, consumer use of the product, product labeling, and product marketing. *See Action On Smoking and Health v. Harris*, 655 F.2d 236, 239–40 (D.C.Cir. 1980).[2]

Here, the FDA claims that BCO meets the first prong of the food additive definition because its intended use is such that the BCO "results or may reasonably be expected to result, directly or indirectly, in its becoming a component ... of [a] food." 21 U.S.C. § 321(s). Specifically, the FDA claims that BCO is intended to become a component of dietary supplements. According to the FDA, Traco intends to ship the BCO to encapsulators, who will then place the BCO in gelatin capsules for sale to the public. The FDA has submitted evidence that BCO is commonly sold in capsule form. Although it appears that most of these capsules only contain BCO, the gelatin making up the capsule, and a preservative of some sort, the FDA has submitted evidence that BCO is also occasionally combined with either salmon oil or

linseed oil before being encapsulated. The FDA states that it "has discovered no evidence that BCO has any use in food except as a component of dietary supplements." Docket # 41, at 10. According to the FDA, because the evidence demonstrates that BCO is intended to be used as a component of dietary supplements, the burden of showing that BCO is generally regarded as safe shifts to Traco.

Traco disagrees. It claims that the evidence does not demonstrate that BCO is intended to be a component of dietary supplements, but rather that BCO is the dietary supplement itself. According to Traco, it intends to sell BCO in one of three ways: (1) as a bottled oil used for teaspoon ingestion as a dietary supplement; (2) as oil placed in a gelatin capsule without other ingredients as a dietary supplement; or (3) as oil placed in a gelatin capsule with a chemical intended to prolong shelf life.[3] In any of these three products, Traco argues, the BCO is not a component of the dietary supplement, but the dietary supplement itself; the three methods of marketing BCO merely represent the delivery system. Traco further argues that it cannot be held responsible for what other processors do with BCO—even with BCO they happen to purchase in bulk from Traco. According to Traco, because the evidence does not demonstrate that BCO is intended to be used as a component of dietary supplements, the FDA has failed to carry its initial burden of showing that BCO is properly classified as a food additive.

2. Although *Harris* is a new drug case, the court finds—and the parties agree—that the analysis of intent in a food case is similar to that undertaken in a new drug case.

3. According to the FDA, it first learned that Traco intended to sell BCO as pure oil in a bottle when Traco responded to the FDA's motion for summary judgment on March 26, 1991. Apparently, that is correct: Traco has submitted additional discovery which reveals that the decision to sell BCO in bottled form was made recently—certainly, *after* the BCO at issue was seized. Because the FDA had no opportunity to address the claim that Traco intended to sell BCO in a bottle, it moved to exclude that new evidence as violative of Fed.R.Civ.P. 26(e)(2), which holds that discovery must be amended promptly when a party learns that its previous

submissions were inaccurate. Under *Holiday Inn, Inc. v. Robertshaw Controls Co.*, 560 F.2d 856, 858 (7th Cir.1977), it is proper for a court to exclude such evidence when considering a motion for summary judgment.

It appears to the court that Traco's recent decision to sell pure BCO in a bottle is, to say the least, conveniently timed. Accordingly, Traco's claim, while relevant to the question of intent, is reduced in significance when compared to the more voluminous evidence of Traco's intent to sell BCO in encapsulated form. Because the court's decision to deny the FDA's motion for summary judgment in no way depends on evidence of Traco's intent to sell BCO in bottles, however, the court will not strike the evidence from the record.

The FDA answers Traco's claims by noting that Traco has admitted to selling BCO in a capsule form. Although the BCO in such a capsule may not be mixed with, or react with, any other ingredient, the Seventh Circuit in *FoodScience*, 678 F.2d at 738–38, has held that even a substance which is the principal ingredient in a food may be deemed a food additive. The majority opinion in *FoodScience* made no distinction between active or principal ingredients and other ingredients. The court simply held that "[t]he term 'component' [in the definition of food additive] ... includes large quantities of unsafe substances as well as small quantities." 678 F.2d at 738. Indeed, the court cited a Second Circuit case which held, "We do not believe a substance gains immunity from being a food additive merely because it also qualifies as a food." *Id.* (citing *National Nutritional Foods Ass'n v. Kennedy*, 572 F.2d 377, 391 (2nd Cir.1978)). According to the FDA, enforcement of the Act demands that it be free to deem a substance a "food additive," even if a common understanding of the term "food additive" would not encompass the substance. That, claims the FDA, is what *FoodScience* holds.

Yet the facts in *FoodScience* are readily distinguishable from the facts in this case. There, the ingredient which the FDA sought to characterize as a food additive constituted only 4% of the dietary supplement. 678 F.2d at 737–38. Although the ingredient was the principal ingredient—the reason that consumers bought the supplement—the Seventh Circuit rejected a principal ingredient exception to the Act. Because the evidence proved that the ingredient was one of several components of the dietary supplement, the FDA could properly deem it a food additive, thus forcing the claimant to prove that it was generally regarded as safe. *Id.* at 739–40.

In contrast, here, the FDA has presented no evidence that the BCO is merely a component of the dietary supplement. Traco asserts—and the FDA does not disprove—

that it intended to sell the seized BCO in its pure form, albeit encapsulated in a gelatin container.[4] The FDA has failed to explain how placing BCO in a gelatin container converts the BCO into a food additive. A food additive must be a substance which is intended to be a *component* of a food. *See* § 321(s). But BCO is more than one of several components or even the principal component in the dietary supplement capsule. BCO *is* the supplement, the capsule's sole *raison d'etre*. Although the rule set out in *FoodScience* is broad, it is not so broad that any substance which is not consumed directly may be deemed a "food additive." As Judge Cudahy noted in concurrence, "I believe ... that this would be a far different case if [the substance sought to be condemned] were being marketed as a single ingredient." *FoodScience*, 678 F.2d at 741 (Cudahy, J., concurring).

Although there does not appear to be a case holding that a pure substance which is delivered to consumers by way of a gelatin capsule may be considered a food additive, there are cases holding that such a substance may *not* be considered a food additive. *See, e.g., United States v. Articles of Food (Blue–Green Algae)*, No. 83–1180–FR, slip op., 1984 WL 1981 (D.Ore. November 8, 1984) (unpublished opinion); *United States v. An Article of Food (L–Tryptophan)*, No. 77–687, slip op., (D.N.J. January 23, 1979) (unpublished opinion) (Lexis copies attached to Docket # 45). In *Blue–Green Algae*, Judge Frye held that seaweed products sold in gelatin capsules—though otherwise in their pure form—could not be considered food additives, but should be considered the food itself. The court concluded that because "[t]here is no evidence that the purpose of the products is to affect the characteristics of another food or to become a component of another food[,] ... the court concludes that the intended use of the [product] is not as a 'food additive.'" *Id.* at 6.

---

**4.** Traco admits that it also planned to sell some of the BCO with a small amount of preservative added in the gelatin capsules. The FDA does not appear to argue—and, in any event, has not proven—that the addition of such a preservative converts the BCO into a food additive within the meaning of the Act.

Similarly, in this case, there is no proof that the BCO affects the characteristics of another food or becomes a component of another food. The FDA merely claims, on the authority of *FoodScience*, that if a person ingests any other substance when consuming BCO, then the BCO may be considered a food additive. The court does not read *FoodScience* so broadly. The facts in that case do not dictate such a rule and Judge Cudahy's concurrence makes clear that at least one member of the panel expressly rejected such a broad rule.

■ The court is mindful that it must interpret the Food, Drug, and Cosmetic Act broadly to aid in protecting the public health. *FoodScience*, 678 F.2d at 739 (citing *United States v. Ewig Brothers Co., Inc.*, 502 F.2d 715, 722 n. 27 (7th Cir.1975)). It is also mindful, however, that in passing the 1958 food additive amendment to the Act, Congress was primarily concerned with the addition into food of untested and potentially unsafe flavor, texture, processing, and preservative agents. *See* S.Rep. No. 2422, 85th Cong., 2d Sess., *reprinted in* 1958 U.S.Code Cong. & Admin.News 5300, 5304. BCO is none of those things. If the FDA believes that BCO is a harmful food, it may seek to condemn it as an "adulterated food" under § 342(a)(1). But the agency may not seek to condemn it by calling it something it is not. Allowing the FDA to call a single ingredient placed into a gelatin capsule a "food additive" would eliminate any distinction between "food" and "food additive," terms which the Act itself defines separately. *Compare* § 321(f) *with* § 321(s). This court cannot permit the agency charged with enforcing the Act to redefine its terms.

IT IS THEREFORE ORDERED that the plaintiff's motion for summary judgment (# 40) is denied.

IT IS FURTHER ORDERED that the case is set for trial beginning December 2, 1991 at 9:00 am.