UNITED STATES of America, Plaintiff,

v.

**TWO PLASTIC DRUMS, MORE OR LESS OF AN ARTICLE OF FOOD, LABELED IN PART: VIPONTE LTD. BLACK CURRANT OIL BATCH NO. BOOSF 039, Etc., Defendants.**

Claim of TRACO LABS, INC., Claimant.

No. 88–CV–2398.

United States District Court,
C.D. Illinois,
Danville Division.

Nov. 27, 1991.

David Hoff, Asst. U.S. Atty., Frances Hulin, Asst. U.S. Atty., Danville, Ill., for plaintiff.

Robert Ullman, Steven Shapiro, Bass & Ullman, New York City, for defendant.

## ORDER ON TRACO'S MOTION FOR SUMMARY JUDGMENT

BAKER, District Judge.

This is an *in rem* seizure action under the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §§ 301–394 (1972 & Supp.) (the "Act"). The plaintiff, the United States of America, through the Food and Drug Administration, seeks to condemn and destroy two drums of black currant oil ("BCO"). BCO is extracted from the seeds of the black currant berry and is marketed as a dietary supplement.[1] Its proponents claim that it provides health benefits because of its unique fatty-acid structures. The claimant, Traco Labs, Inc., asserts that the drums belong to it and that they cannot be condemned. Traco has moved for summary judgment pursuant to Fed.R.Civ.P. 56 and the FDA objects.

As the basis for condemning the BCO, the FDA claims that the BCO is "adulterated." Under the relevant portions of 21 U.S.C. § 342, "A food shall be deemed to be adulterated—(a)(1) If it bears or contains any poisonous or deleterious substance which may render it injurious to health ... [or (2)(C)] if it is, or it bears or contains, any food additive which is unsafe within the meaning of section 348 of this title...." The Act defines food additive in 21 U.S.C. § 321(s) as

> any substance, the intended use of which results or may reasonably be expected to result, directly or indirectly, in its becoming a component ... of any food ... if such substance is not generally recognized, among experts qualified by scientific training and expertise to evaluate its safety, as having been shown through scientific procedures ... to be safe under the conditions of its intended use.

Under section 348, a food additive is deemed to be unsafe unless the Secretary has specifically issued regulations for its use.[2]

Under this statutory scheme, therefore, if the FDA can show that a substance is a "food additive" that has not been deemed safe by the Secretary, the proponent of the substance has the burden of showing that the substance is generally regarded by experts as safe (GRAS). If the FDA cannot show that the substance is a food additive, then in order to confiscate it as an "adulterated food," the FDA has the additional burden of showing that the substance is injurious to health.

The FDA has claimed throughout this suit that BCO is a food additive, and therefore has not attempted to prove that it is injurious to health. According to Dr. Paul Kuznesof, an expert for the FDA, a gelatin capsule is an FDA–approved functional component of food which serves as a "convenient system for delivery of reproducible and quantitative amount of other com-

---

1. According to Traco, it intends to sell BCO in one of three ways: (1) as a bottled oil used for teaspoon ingestion as a dietary supplement; (2) as oil placed in a gelatin capsule without other ingredients as a dietary supplement; or (3) as oil placed in a gelatin capsule with a chemical intended to prolong shelf life. Order of April 10, 1991 (docket # 62).

The parties dispute whether the court can consider evidence that Traco intends to sell BCO in bottled form. However, as resolution of that dispute will not alter the court's decision, the court will not strike such evidence. See Order of April 10, 1991 at note 3.

2. No such regulations exist for BCO.

ponents[3]" and also can serve to cover up the unpleasant taste of the filler substance. Exh. 2 to plaintiff's opp. to summary judgment. The FDA's basic contention is that when it is encapsulated, the BCO becomes a "component" of the entire supplement, which includes the capsule and the BCO. In January, 1991, the FDA moved for summary judgment, claiming that the evidence clearly showed that BCO was a food additive and that the claimants had provided no evidence that it was generally regarded as safe. This court denied that motion in an order of April 10, 1991, 761 F.Supp. 70 (C.D.Ill.1991). In so doing, this court explained that in none of the uses for which BCO was intended would BCO be a "component" of a dietary supplement, but rather, BCO *is* the dietary supplement. Therefore, we determined that BCO is not a food additive; it is merely a food. Relying on this court's April 10, 1991 order, Traco now moves for summary judgment. In objecting to Traco's motion, the FDA continues to argue that BCO is a food additive within the meaning of the Act and it urges this court to reconsider its prior determination. The FDA has not provided this court with a statement of any genuine issues of fact, but argues instead that the case can be resolved as a matter of law.

It is important to note that the statutory definition of a substance under the Act does not depend on any inherent properties of the substance, but rather, it depends on how the vendor of the substance intends the substance to be used. *National Nutritional Foods Ass'n v. Mathews*, 557 F.2d 325, 333, (2d Cir.1977); *Nutrilab Inc. v. Schweiker*, 713 F.2d 335, 337 (7th Cir.1983). Therefore, the fact that a substance similar to BCO has been held to be a food additive in another context may not be relevant to the facts of this case.

In *United States v. An Article of Food ... FoodScience*, 678 F.2d 735 (7th Cir. 1982), the Court of Appeals refused to recognize an exception to the definition of "food additive" for principal ingredients.

The party urging such an exception had argued that in enacting the Act, Congress was mainly concerned with "substances that become a component of or affect food in some subtle or incidental fashion, such as substances 'intended for use in producing, manufacturing, packing, processing etc.'" In that case, analogous to BCO, the substance in question was sold in tablet form. However, the substance was "the lesser of two active components of the tablets ... and account[ed] for less than 4% of each tablet's weight." The court held, therefore, that the substance was a food additive.

This court, in its April 10, 1991 order distinguished *FoodScience* from the facts of this case. We pointed out that in *Food-Science*, Judge Cudahy, in his concurring opinion, explained why, in his view, a substance which is marketed as a single ingredient is not within the definition of "food additive":

> Limiting the definition of "food additive" to substances which are either added to or sold in combination with other active ingredients not only comports with common usage, but also makes sense from the point of view of informing the consumer. When food substances ... are combined with other "beneficial" ingredients and sold under ... unrevealing brand names ..., consumers may well be unaware of the presence of, or potential dangers associated with, each of the product's individual ingredients; a broad prophylactic rule such as the burden-shifting "food additive" presumption is therefore appropriate. When substances ... are marketed in pure form, however, and *are properly labeled as such*, consumers can more reasonably be expected to know what they are buying and, thus, can safely be given the opportunity to weigh for themselves the benefits and risks of their purchase.

*FoodScience*, 678 F.2d at 741–42 (emphasis in original) (Cudahy, J., concurring).

---

**3.** The witness' conclusory use of the word "component" does not affect the court's determination of whether BCO is a component of food.

The FDA urges this court to reconsider its prior holding first by pointing out a recent Seventh Circuit decision which held that the FDA should be given discretion in interpreting ambiguous provisions of the Act as long as those provisions do not involve the "very scope of the agency's authority." *United States v. 25 Cases ... Sensor Pads*, 942 F.2d 1179 (7th Cir.1991) (aff'g order of June 14, 1990, 89 C 2114 (C.D.Ill)). In that case, the court agreed with the FDA's interpretation of the word "devices" but also held that even if the statute were ambiguous, it would defer to the agency's reasonable determination. [However, the seventh circuit may be only paying lip service to the idea of deference to the agency since it did engage in its own analysis of the meaning of the term.]

The FDA also stresses the importance of *National Nutritional Foods Ass'n v. Kennedy*, 572 F.2d 377 (2d Cir.1978), which held that vitamins and minerals could be regulated as food additives. The court held that the fact that an item could be classified as a food did not preclude it from being classified as a food additive as well. The opinion in that case did not specifically deal with whether a vitamin encapsulated as a single ingredient was a "component" of food. However, the FDA points out that the regulation in question in that case applied to dietary supplements that consisted of a single vitamin or mineral. Nevertheless, this court considered *National Nutritional Foods Ass'n* and rejected application of that case to the facts of this case.

The FDA also brings to the court's attention decisions from other district courts which differ from this court on whether a substance such as BCO could be a food additive. In *United States v. Approx. 180 Kg. Bulk Metal Drums ... Efamol*, 761 F.Supp. 180 (D.Me.1991), the District Court of Maine ordered the condemnation of two types of capsules which contain BCO on the grounds that the BCO was a food additive that was not GRAS and not regulated by the FDA. That same court denied reconsideration based on this court's April 10,

1991 order. However, that case differs from this case because in that case, the BCO was not the sole ingredient in the capsules. It was undisputed in that case that the BCO capsules contained:

> (4) "Efamol PMS" capsules containing black currant oil (hereinafter BCO), fish oil, various vitamins and minerals; and
> (5) "Efamax" capsules containing BCO, fish oil, various vitamins and minerals and other ingredients.

*Efamol* at 182. In this case, on the other hand, the FDA has taken the position that the BCO would be a food additive even if it were the sole ingredient in the capsules.[4] In addition, the FDA cites *United States v. Article of Food ... Orotic Acid*, 414 F.Supp. 793 (E.D.Mo.1976), which concerned orotic acid, a substance found naturally in cow's milk and also manufactured through a fermentation process. That court found the orotic acid to be a food additive, and ordered its condemnation. However, the opinion does not discuss whether the orotic acid was intended to be marketed as a single ingredient or whether it was mixed with other substances before it was to be sold.

The FDA also urges that the legislative history of the Act demonstrates that the term "food additive" should be construed broadly, to enable the FDA to protect the public. They point out that their own regulations have recognized "nutrient substances used in dietary supplements as substances whose intended use results in their becoming a component of food," and that Congress has not disagreed with that interpretation.

Nothing that the FDA has provided in opposition to the claimant's motion for summary judgment persuades the court to alter its prior determination that the BCO impounded by the government in this case is not a food additive under 21 U.S.C. § 321(s). The definition of food additive urged on this court by the FDA would obscure any distinction between "foods"

---

4. Although some of Traco's encapsulated BCO does contain some added preservatives, the FDA does not argue that these are relevant to wheth-

er BCO is a food additive. See note 4 of this court's April 10, 1991 order.

under § 321(f) and "food additives" under § 321(s). The FDA is correct that many substances that qualify as foods also qualify as food additives, and as a matter of fact, food additives may be foods. However, the FDA's reasoning suggests that all foods that are not generally recognized as safe are food additives, and Congress could not have intended that result.

IT IS THEREFORE ORDERED that claimant's motion for summary judgment is granted (docket # 62) and the clerk is order to enter judgment in favor of the claimant, Traco Labs, Inc.

IT IS FURTHER ORDERED that claimant's motion to bifurcate pursuant to Fed. R.Civ.P. 42(b) (docket # 81) is moot.